Gregory J. **PAUKSTIS**

v.

**KENWOOD GOLF & COUNTRY CLUB, INC. et al.**

**No. CIV.A. DKC2002–0818.**

United States District Court, D. Maryland.

Jan. 23, 2003.

Seth C. Berenzweig, Albo and Oblon LLP, Arlington, VA, for Christopher Furnas.

Jason M. Branciforte, Littler Mendelson PC, Washington, DC, for Kenwood Golf & Country Club, Inc.

Edward Paul Henneberry, Keegan and Sotelo PLC, Fairfax, VA, for Gregory J. Paukstis.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this case brought under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., and other state and federal laws are: (1) the motion of Defendants Kenwood Golf & Country Club, Inc. (Kenwood or the Club) and Christopher Furnas (Furnas) to dismiss counts II, III, VI, VII, and VIII of the amended complaint, or in the alternative for summary judgment, (2) the motion of Plaintiff Gregory Paukstis to dismiss, or in the alternative, for summary judgment as to Defendant Furnas's counterclaims, and (3) Plaintiff's motion to strike the affidavit of Ashby L. Chamberlin. The parties have had full opportunity to brief the issues and no hearing is deemed necessary. Local Rule 105.6. For the reasons that follow, the court will deny Defendants' motion for summary judgment on count II of Plaintiff's complaint, deny Defendants' motion to dismiss counts III and VI, grant Defendants' motion to dismiss counts VII and VIII of Plaintiff's complaint, grant Plaintiff's motion for summary judgment on Furnas's counterclaim, and deny Plaintiff's motion to strike.

**I. Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment and Plaintiff's Motion to Strike Affidavit.**

*A. Background*

The following facts are alleged by Plaintiff. In or about September 1990, Kenwood, through Furnas, the Club's Director of Tennis, hired Plaintiff as an assistant tennis professional to provide private tennis instruction for the Club's members. When Plaintiff began working at the Club, he received as compensation fifty percent of the proceeds for each lesson he taught and $10 per hour for each clinic Defendants required him to teach. Payments for the tennis instruction were made by Club members directly to Defendants.

In or about January 1991, Defendants hired Plaintiff on a full-time basis. Plaintiff's compensation package was modified to include a fifty dollar per week payment in addition to the compensation he received for private lessons and clinics. Plaintiff was told that the additional payment of fifty dollars per week covered the time he was required to spend in the Kenwood Tennis Shop performing shop-related tasks, which included billing services, ordering and selling merchandise, booking tennis lessons, and overseeing the general operations of the shop. Plaintiff was also required to work five and a half days a week from 8:00 a.m. until at least 6:00 p.m. Defendants told Plaintiff that he was still an independent contractor and that the new work arrangement did not give rise to, or entitle him to, employee status.

Defendants supplied Plaintiff with the facilities and equipment he needed to perform the tasks required of his job. Plaintiff was given free access to, and use of, the Club's tennis courts, tennis equipment, an office, and a telephone. As with other tennis professionals, Plaintiff was required to teach all private lessons and clinics on the Club's premises and was not free to reject work assignments or not teach certain Club members. In fact, Furnas told Plaintiff that he was required to give private instruction to any member who requested a lesson during Plaintiff's free time. Plaintiff was also not permitted to work for any competitor or provide tennis lessons at any other clubs or facilities. All hourly rates for Plaintiff's services providing tennis lessons and group clinics were set by Furnas without input from anyone else.

Plaintiff received assignments from Furnas and was directed by Furnas as to the manner and method by which he was to teach clinics, oversee maintenance of the tennis courts, and run Club tournaments and events. During the summer months, Furnas required assistant tennis professionals to teach the junior clinics at Furnas's rates and coach the junior boys' and girls' tennis teams in inter-club matches. Furnas did not participate in these junior team programs but instead assigned all program tasks to the assistant tennis professionals.

From July 1998 to 2001, Plaintiff ran and directed the Junior Boys' MATA Tennis Tournament that is held every year at the Club. Plaintiff received approximately $2000, approved by the Kenwood Tennis Committee and Furnas, to run and operate the tournament. Because Furnas refused to participate or become involved with the tournament, the tasks of overseeing the scheduling and coordinating the five-day tournament fell to Plaintiff. For these responsibilities, Plaintiff received a nominal fee in lieu of the wages he lost from teaching lessons or clinics during the tournament week.

Kenwood, through agents like its General Manager and Furnas, required Plaintiff to inform and educate prospective members about the Club's tennis facilities and programs when Furnas was unable to do so. Assistant tennis professionals were also required to enforce Club policies and rules relating to membership which included ensuring that all members and their guests register at the tennis desk before playing tennis and patrolling the tennis courts to ensure that those with suspended memberships did not use the tennis courts.

In May 2001, the Club mandated that all employees of the Club, including Plaintiff, attend and participate in a two-day CPR course. When Plaintiff informed Furnas of his concern over losing two days' worth of wages, Furnas approached the Club and was told by the General Manager that Plaintiff's employment at the Club could

be terminated if he did not attend the CPR course.

Defendants controlled Plaintiff's vacation time. In May 2001, Plaintiff planned to take leave from work for a day to attend his sister's graduation ceremony. Furnas told Plaintiff that he was not permitted to take leave on that day because his services were needed at the Club. In October 2001, Plaintiff made arrangements to visit his sister who had just had a baby. Again, Furnas informed Plaintiff that he would not be permitted to take leave from work because his services were needed at the Club.

Later in October 2001, Plaintiff began investigating his status as an independent contractor and Furnas's right to impose requirements on his work obligations. Plaintiff talked to other tennis professionals and discovered that it was not customary for assistant tennis professionals to work as independent contractors and receive no benefits from their employers. Plaintiff talked to assistant golf professionals and discovered that they were treated as employees.

On November 14, 2001, Plaintiff submitted a letter to Furnas requesting that he be treated as an employee and paid overtime compensation for the hours he worked for Defendants that exceeded forty per week. Defendants rejected Plaintiff's request.

On December 3, 2001, Plaintiff gave Defendants verbal notice of his resignation. Plaintiff submitted his written notice of resignation the next day. Plaintiff worked exclusively and continuously for Defendants for over eleven years and was required to pay all employment taxes with no contribution from Defendants during that time. In addition, Defendants never provided Plaintiff with any health insurance, sick leave, or vacation pay.

Plaintiff filed the present suit against Defendants on March 18, 2002. Plaintiff brings a combined total of eight counts against Defendants. Plaintiff claims that Kenwood and Furnas failed to pay him overtime compensation in violation of the FLSA, 29 U.S.C. §§ 207 and 215, (counts I and IV) and in violation of the Maryland Wage and Hour Law, Md.Code Ann., Lab. & Empl. §§ 3–415 and 3–428, (counts II and V) and that they failed to pay their share of his employment taxes in accordance with the Federal Insurance Contributions Act (FICA), 26 U.S.C. § 3111 (counts VII and VIII). Plaintiff asserts a claim of negligent supervision against Kenwood for its failure properly to supervise Furnas, its authorized agent, to ensure that he paid his employees proper compensation in compliance with federal and state statutes (count III). Plaintiff also brings a negligence claim against Furnas for failing properly to classify and treat Plaintiff as an employee while Plaintiff was under Furnas's direction and control (count VI).

On May 28, 2002, Defendants filed their motion to dismiss or, in the alternative for summary judgment, as to counts II, III, VI, VII, and VIII of Plaintiff's complaint. On the same day, Defendant Furnas answered Plaintiff's complaint and filed a counter-claim against Plaintiff for tortious interference with economic relationship and defamation. Plaintiff moved to dismiss Furnas's counter-claim, or in the alternative for summary judgment, on June 14, 2002. On June 20, 2002, Plaintiff moved to strike the affidavit of Ashby L. Chamberlin. The court will address each of these motions in turn.

*B.  Standard of Review*

Defendants have moved to dismiss for failure to state a claim on the basis of Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment on the basis of

Rule 56. A court only considers the pleadings when deciding a Rule 12(b)(6) motion. If matters outside the pleadings are presented and not excluded, the motion must be considered under the summary judgment standard of Rule 56.

A Rule 12(b)(6) challenge requires a court to accept all well-pled allegations of the complaint as true and to construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *See Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir.1997). A motion to dismiss should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). However, the court need not accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir.1989), or conclusory factual allegations devoid of any reference to actual events. *See United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir.1979). Nevertheless, neither vagueness nor lack of detail is a sufficient ground on which to grant a motion to dismiss. *See Hill v. Shell Oil Co.,* 78 F.Supp.2d 764, 775 (N.D.Ill.1999) (quoting *Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985)).

It is well established that a court may grant a motion for summary judgment only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gill v. Rollins Protective Servs. Co.,* 773 F.2d 592, 595 (4th Cir.1985); *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir. 1950); *Morrison v. Nissan Motor Co.,* 601 F.2d 139, 141 (4th Cir.1979). A material fact is one that constitutes an element that is essential to a party's case. *Celotex v. Catrett,* 477 U.S. at 322–23, 106 S.Ct. 2548. As the Supreme Court stated in *Anderson,* ". . . the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." 477 U.S. at 248, 106 S.Ct. 2505.

A genuine issue as to a material fact exists if the evidence that the parties present to the court is sufficient to indicate the existence of a factual dispute that could be resolved in the non-moving party's favor through trial. *See Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505. While it is the movant's burden to show the absence of a genuine issue of material fact, *Pulliam Investment Co., Inc. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987), it is the non-moving party's burden to establish its existence. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The evidence that the non-moving party presents to this end must be more than a "mere scintilla," *Barwick v. Celotex Corp.,* 736 F.2d 946, 958–59 (4th Cir.1984), more than "merely colorable," *Celotex v. Catrett,* 477 U.S. at 327, 106 S.Ct. 2548, and more than "some metaphysical doubt." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. In order for the non-moving party to survive summary judgment, it must present evidence that is "significantly probative." *Celotex v. Catrett,* 477 U.S. at 327, 106 S.Ct. 2548. In a motion for summary judgment, the inferences that the court draws from the facts and evidence presented shall be viewed "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *see also Matsushita,* 475 U.S. at

587–88, 106 S.Ct. 1348; *Pulliam*, 810 F.2d at 1286; *Gill*, 773 F.2d at 595.

A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the non-moving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. In *Celotex Corp.*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548.

## C. Analysis

■ Defendants have presented an affidavit of Mr. Ashby L. Chamberlin,[1] President of the Kenwood Club, for the court's consideration only with respect to count II (Failure of Kenwood to Pay Overtime Compensation in violation of Md.Code Ann., Lab. & Empl. §§ 3–415 and 3–428), and contend that the Kenwood Club is a private membership club.[2] They do not present any material outside the pleadings concerning counts III (Negligent Supervision by Kenwood), VI (Negligence by Furnas), VII (Failure of Kenwood to Pay Retirement and Medicare Taxes in violation of FICA, 26 U.S.C. § 3111), and VIII (Failure of Furnas to Pay Retirement and Medicare Taxes in violation of FICA).

### 1. Failure of Kenwood to Pay Overtime Compensation under Maryland State Law (count II).

■ Defendants challenge Plaintiff's claim against Kenwood brought under the Maryland Wage and Hour Law, Md.Code Ann., Lab. & Empl. §§ 3–415 and 3–428, because, as a "bona fide private membership club," Kenwood is exempted from the statute's requirement to pay overtime compensation. *See id.* at § 3–415(b)(5). The exemption constitutes an affirmative defense to the claim and the burden, as apparently conceded by Defendants, is on them both to plead and prove its application. *Crane v. Scribner*, 369 Md. 369, 395,

---

1. Mr. Chamberlin's affidavit refers to an exhibit that is not attached. Mr. Chamberlin states in paragraph 4 of his affidavit that a true and correct copy of the application for membership in the Club is attached to the affidavit. Paper 19, Ex. 1. No application appears in the court file.

2. Plaintiff has moved to strike the affidavit on the sole ground that Mr. Chamberlin's statements are at odds with the holding in *Bell v. Kenwood Golf & Country Club, Inc.*, 312 F.Supp. 753 (D.Md.1970) (finding that Kenwood was not a bona fide private membership club for the purposes of qualifying for Title II's exemption from the requirement to provide equal access to public accommodations). As long as the statements contained in the affidavit are made on the basis of personal knowledge, it is a proper affidavit, notwithstanding an earlier judicial decision. Accordingly, the motion to strike will be denied.

800 A.2d 727, 742 (2002) ("[T]he ususal rule [is] that a party who seeks exemption from a statute has the burden of justifying the exemption."). Thus, the issue can only be considered on summary judgment and not on a motion to dismiss. As stated above, Defendants rely on the affidavit of Mr. Chamberlin in support of that argument. Plaintiff maintains that Kenwood does not qualify as a "bona fide private membership club," but has not provided any counter affidavits on that issue.

▪ Neither the statute itself nor state case law defines "bona fide private membership club" under this provision. While the issue ultimately is one of state law, the parties agree that this court may look to federal law for guidance. *See Benford v. American Broadcasting Co., Inc.,* 649 F.Supp. 9, 10 (D.Md.1986) ("In the absence of any state law interpretation of the term, it is appropriate to turn for guidance to the federal statute . . . .").[3]

Under federal law, the burden would be on the defendant to prove that it is a private membership club. *Quijano v. Univ. Federal Credit Union,* 617 F.2d 129, 132 (5th Cir.1980) (citing *Nesmith v. Young Men's Christian Assoc. of Raleigh,* 397 F.2d 96, 101 (4th Cir.1968)). Both Title VII, which covers employment discrimination, and Title II, which covers access to public accommodations, of the Civil Rights Act contain exemptions for "bona fide private membership clubs." It is generally understood that the scope of the Title II and Title VII private club exemptions overlap, but the class of clubs to which Title VII is applicable is narrower than the one covered by Title II. *See Quijano,* 617 F.2d at 132. The Title VII exemption, located at 42 U.S.C. § 2000e-(b)(2), which excludes "bona fide private membership clubs" from Title VII's coverage, states:

> The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees . . . but such term does not include . . . (2) a bona fide private membership club . . . which is exempt from taxation under section 501(c) of the Internal Revenue Code of 1954 . . . .

Most of the cases that address the private club exemption under the Civil Rights Act of 1964—and nearly all of the older cases—arise under Title II. The Title II exemption excludes "a private club or other establishment not in fact open to the public" from the statutory prohibition against discrimination in access to places of public accommodation. 42 U.S.C. §§ 201(a) and (e); *see Quijano* 617 F.2d at 132 (citing list of Title II cases).

It is not necessary at this stage to decide which, if either, of the federal definitions would be applied by the Court of Appeals of Maryland.[4] Under either definition, the affidavit presented by Defendants is insufficient. The affidavit contains mere conclusions, rather than facts, and is therefore insufficient to demonstrate conclusively that Kenwood is a bona fide private membership club that is exempted from the Maryland statutory requirement to pay overtime under any of

---

**3.** Both Plaintiff and Defendants agree that where a state statute and case law do not provide a definition for a term, federal law may be turned to for guidance. Defendants suggest that Title VII's exemption is the appropriate source for guidance and Plaintiff agrees. Paper 23 at 9. The case Plaintiff relies upon for the proposition that Kenwood is not a bona fide private membership club, *Bell v. Kenwood Golf and Country Club,* 312 F.Supp. 753 (D.Md.1970), is a Title II case.

**4.** At an appropriate point, the question may have to be certified to the Court of Appeals of Maryland, if the facts, once fully developed, indicate that the precise definition makes a difference in the outcome.

the proposed definitions of the exemption. For example, the affidavit is silent as to whether Kenwood is exempt from taxation. A genuine issue of material fact remains as to whether Kenwood qualifies as a bona fide private membership club under Maryland law. Defendants have not met their burden on this motion for summary judgment on count II and the motion will therefore be denied.

### 2. *Negligent Supervision by Kenwood and Negligence by Furnas (counts III and VI).*

Section 207(a)(1) of the FLSA requires that employees be paid at a rate of not less than one and one-half times the regular rate at which they are employed for a workweek longer than forty hours. 29 U.S.C. § 207(a)(1). Plaintiff, in addition to claiming that Defendants failed to comply with the FLSA's overtime compensation requirement, also brings a negligence claim against Defendant Furnas for negligently failing to comply with the FLSA's terms and a claim against Defendant Kenwood for negligent supervision for failing to ensure that Furnas complied with the FLSA. Defendants argue that Plaintiff's negligence claims must be dismissed because they are duplicative of his FLSA claims. Plaintiff responds that he is entitled to plead alternate causes of action arising out of the same set of operative facts as his FLSA claims because the FLSA does not preempt state tort claims.

Contrary to Plaintiff's assertions, the negligence claims are not simply alternate causes of action. Plaintiff can only prevail on the negligence claims if he also prevails on the FLSA claims; it would be impossible to find Defendants liable for negligently failing to comply with the FLSA if they are found not to have violated the FLSA in the first place. Plaintiff's negligence claims are therefore not alternative causes

of action in the sense of separate and independent theories of liability that arise from the same set of operative facts as other theories that have been advanced.

■ Plaintiff's second argument against dismissal—that the FLSA does not preempt state tort law claims—may be correct, but illogical. He seeks identical damages both under federal and state law. As stated above, he cannot prevail on the state claims unless he also prevails on the federal claims, although the converse is not true: he may prevail on the federal claims, but still must prove negligence to prevail on the state claims. According to the articulation of the pre-emption doctrine by the Court in *English v. General Electric Co.*, 496 U.S. 72, 74, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990), state law is pre-empted by a federal statutory scheme in three circumstances: (1) when Congress explicitly defines the extent to which its enactments pre-empt state law, (2) where the state law regulates in a field that Congress intended the Federal Government to occupy exclusively, and (3) where state law actually conflicts with [the purposes of the] federal law. *See also Zelaya v. J.M. Macias, Inc.*, 999 F.Supp. 778, 781 (E.D.N.C. 1998).

■ First, it is true that the FLSA does not explicitly preempt state tort law claims. Second, the terms of the FLSA do allow states and municipalities to enact wage and hour legislation that is more favorable than what is provided for in the FLSA. *See* 29 U.S.C. § 218(a). Because the FLSA's terms contemplate coextensive FLSA and state law coverage, it may be inferred that Congress did not intend federal law to occupy the field of wage and hour regulation exclusively. Third and finally, Plaintiff's negligence claims do not necessarily conflict with the purpose of the FLSA's remedial scheme, at least where a

plaintiff seeks identical damages under both federal and state law.

The court will therefore deny Defendants' motion to dismiss counts III and VI of Plaintiff's complaint, but encourages Plaintiff to streamline the complaint in a logical fashion.

### 3. Failure of Kenwood and Furnas to Pay Retirement and Medicare Taxes (counts VII and VIII).

■ Plaintiff brings claims under the Federal Insurance Contributions Act (FICA) against Defendants Furnas and Kenwood for failure to pay Plaintiff's retirement and Medicare taxes. Defendants argue that these claims must be dismissed because FICA does not provide for a private cause of action.

FICA establishes a federal tax on the wages paid to workers. Money collected from the FICA tax is used to fund the Social Security Trust Fund. Employers withhold a percentage of their employees' wages based on the applicable FICA wage rate. The money withheld is then paid to the government. In addition to the withheld wages, employers also a pay a FICA "excise tax" equal in amount to what is paid by the employee. Employers who hire independent contractors do not pay the excise tax for those workers; instead, independent contractors pay the full 100%—rather than 50%—of the money due under FICA.

Plaintiff claims that he was wrongfully designated as an independent contractor by Defendants and that Defendants therefore violated FICA by failing to contribute to Plaintiff's retirement taxes. The question presented is whether a private cause of action exists under FICA. It is undisputed that FICA, by its express terms, does not provide for a private right of action. The question therefore, is whether a private right of action may be implied

from FICA's text, structure, and legislative history.

The Supreme Court recently tightened the test used to determine whether a statute creates a private right of action. In *Gonzaga University v. Doe*, 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002), the Court addressed the specific question of whether the Family Educational Rights and Privacy Act of 1974 (FERPA) confers rights to individual students enforceable under 42 U.S.C. § 1983. The Court found that it does not. Germane to the analysis here is the Supreme Court's direction that, in general, courts must look to "rights-creating language" and an "individual focus" in the statute's text and structure to determine whether Congress unambiguously intended to create individual rights:

> '[t]he question of whether Congress ... intended to create a private right of action [is] definitively answered in the negative' where 'a statute by its terms grants no private rights to any identifiable class.' *Touche Ross & Co. v. Redington*, 442 U.S. 560, 576, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). For a statute to create such private rights, its text must be 'phrased in terms of the persons benefited.' *Cannon v. University of Chicago*, 441 U.S. 677, 692, n. 13, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

*Id.* at 2279. The Court's message is clear: unless a statute's terms are phrased with an unmistakable focus on a benefited class and its structure shows that "the statute manifests an intent 'to create not just a private *right* but also a private *remedy*'", *id.* at 2276 (citing *Alexander v. Sandoval*, 532 U.S. 275, 286, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (emphases added)), no private right of action may be implied.

FICA is codified at 26 U.S.C. §§ 3101–02, 3111–12, 3121–24, and 3128. Its terms provide for no private right of action and a review of its structure reveals that the statute contains little to no focus on a

benefited class. As the Eleventh Circuit found even before *Gonzaga*, "FICA is, quite simply, a tax-assessing statute designed to raise revenue for the federal government." *McDonald v. Southern Farm Bureau Life Insurance Co.*, 291 F.3d 718, 723 (11th Cir.2002). As such, the intended beneficiary of FICA is the federal government, not individuals. *See id.* at 724. Neither FICA's text nor its structure supports a finding for an implied private right of action. Defendants' motion to dismiss counts VII and VIII of Plaintiff's complaint will therefore be granted.

## II. Plaintiff's Motion to Dismiss, or in the alternative Motion for Summary Judgment, as to Defendant Furnas's Counterclaim.

### A. Background

In his counterclaim, Furnas charges Plaintiff with (1) tortious interference with economic relationship and (2) defamation. He alleges that Kenwood engaged Furnas as an independent contractor to operate the Tennis Shop on Kenwood's premises. Furnas in turn engaged Plaintiff as an independent contractor to assist Furnas in providing professional tennis services to Kenwood's members, which included tennis lessons and other tennis-related services. Had Plaintiff not been retained as an independent contractor, Furnas would have personally or through another worker provided lessons to some, if not all, of Plaintiff's clients.

Plaintiff retained 75% of the lesson fees for the lessons he provided. The remaining 25% went to Furnas. (Furnas retained 100% of the fees for the lessons he personally provided.) Plaintiff also received a commission in connection with the sale of certain merchandise sold through the Tennis Shop.

In November 2001, Plaintiff informed Furnas that he believed he was an employee and demanded payment of overtime compensation. Furnas denied Plaintiff's demand and Plaintiff voluntarily terminated his independent contractor agreement on or about December 4, 2001. On that day, as Plaintiff was leaving Kenwood, he approached several Kenwood members and told them that he was leaving Kenwood, that they should not take lessons from Furnas, and that Furnas committed wrongful acts concerning tax treatment and withholding. Plaintiff returned to Kenwood that evening and repeated these statement to additional members. Furnas alleges that Plaintiff made these statements with the intent of exposing Furnas to public scorn and contempt in order to harm Furnas's business. Plaintiff continued to make wrongful and false statements to Furnas's clients in a bad faith attempt to turn them away. As a result of Plaintiff's actions, Furnas lost six to ten clients and his reputation in the Kenwood community has been severely damaged and his business revenues diminished.

### B. Analysis

█ Plaintiff has submitted three affidavits in support of his motion, in which the affiants deny that he made any of the allegedly defamatory or otherwise actionable statements. Furnas argues against the consideration of the motion as one for summary judgment solely on the basis that discovery has not yet begun and neither party has had the opportunity formally to obtain and review discoverable information pursuant to the Federal Rules of Civil Procedure. Although as a general rule, summary judgment is considered inappropriate before adequate time for discovery has taken place, *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548, the Fourth Circuit has underscored that,

> [w]e, like other reviewing courts, place great weight on the Rule 56(f) affidavit, believing that "[a] party may not simply assert in its brief that discovery was

necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit."

*Evans v. Technologies Applications and Serv. Co.*, 80 F.3d 954, 961 (4th Cir.1996) (quoting *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir.1995)). Furnas has not submitted a Rule 56(f) affidavit. Before filing the counterclaim, Furnas had a duty to undertake some factual investigation. At this stage, it is not enough merely to lament the absence of discovery. He either should have provided affidavits from those who allegedly overheard the actionable statements or provided his own or counsel's affidavit as to what particular as yet unavailable discovery would produce that evidence. He has done neither. Plaintiff's motion therefore will be considered one for summary judgment.

### 1. Tortious Interference with Economic Relationship

Plaintiff challenges Furnas to forecast sufficient evidence in support of his claim for tortious interference with economic relationship. Furnas claims that Plaintiff made statements with the intent to harm Furnas and his business after Plaintiff became angered by Furnas's denial of his demands for overtime and other compensation. He alleges that Plaintiff told several Kenwood members that they should not take lessons from Furnas and that Furnas had committed wrongful acts concerning tax treatment and withholding.

Plaintiff presents the affidavits of Ms. Mindy Schwartzstein, a former student in Plaintiff's tennis clinic at Kenwood, and Ms. Kendall White, a former assistant tennis professional at Kenwood, as well as himself, in support of his contention that he made no statements to any member at Kenwood to induce them not to do business with Furnas or relating to Furnas's tax treatment of Plaintiff. According to

the standard of review for a summary judgment motion, while it is the burden of the moving party to establish the absence of a genuine issue of material fact in a motion for summary judgment, the non-moving party must present some evidence of its existence. Furnas has failed to do so. Furnas simply points to his allegations concerning the statements made in his counter-claim. The unverified counter-claim does not meet the Rule 56 standard for forecasting evidence showing the existence of a genuine issue of material fact. Plaintiff's motion for summary judgment on Furnas's claim of tortious interference with economic relationship will therefore be granted.

### 2. Defamation

Furnas alleges that Plaintiff made statements to members of the Kenwood community about Furnas that were intentionally published, false, and defamatory about Furnas's character and his fairness and honesty. Furnas claims that these statements exposed him to public scorn, contempt, and ridicule, resulted in the loss of clients and revenues, and caused damage to Furnas's reputation. Once again, Plaintiff points to the affidavits of Ms. Schwartzstein, Ms. White, and himself, in support of the contention that the statements he made to members of the Kenwood community related only to the fact that Plaintiff had resigned and would no longer be providing tennis lessons at the Club. In response, Furnas relies again on the un-sworn allegations contained in his counter-claim. These allegations are insufficient to withstand Plaintiff's motion for summary judgment. The court will therefore grant Plaintiff's motion for summary judgment on Furnas's defamation claim as well.

### III. Conclusion

For the foregoing reasons, the court will deny Defendants' motion for summary

judgment on count II of Plaintiff's complaint for failure of Kenwood to pay overtime compensation under Maryland state law. The court will deny Defendants' motion to dismiss counts III and VI of Plaintiff's complaint for negligent supervision by Kenwood and negligence by Furnas. The court will grant Defendants' motion to dismiss counts VII and VIII of Plaintiff's complaint for failure of Kenwood and Furnas to pay retirement and Medicare taxes under FICA. Plaintiff's motion for summary judgment on Furnas's counterclaim will be granted and Plaintiff's motion to strike will be denied. A separate order will follow.

### ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this ____ day of January, 2003, by the United States District Court for the District of Maryland, ORDERED that:

1. Defendants' motion for summary judgment on count II of Plaintiff's complaint pursuant to Fed.R.Civ.P. 56 BE, and the same hereby IS, DENIED;

2. Defendants' motion to dismiss counts III and VI, of Plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6) BE, and the same hereby IS, DENIED;

3. Defendants' motion to dismiss counts VII and VIII of Plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6) BE, and the same hereby IS, GRANTED;

4. Counts VII and VIII of Plaintiff's complaint for failure of Kenwood and Furnas to pay retirement and Medicare taxes under FICA BE, and the same hereby ARE, DISMISSED;

5. Plaintiff's motion for summary judgment on Defendant Furnas's counterclaim BE, and the same hereby IS, GRANTED;

6. JUDGMENT BE, and the same hereby IS, ENTERED in favor of Gregory J. Paukstis, and against Christopher Furnas, on both counts of (1) tortious interference of economic relationship and (2) defamation, of Furnas's counterclaim;

7. Plaintiff's motion to strike the affidavit of Ashby L. Chamberlin BE, and the same hereby IS, DENIED; and

8. The clerk will transmit copies of the Memorandum Opinion and this Order to counsel for the parties.