[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 13, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-15648

_____

D. C. Docket No. 00-00189 CV-RLV-4

CRAIG McDONALD, individually and on behalf
of all others similarly situated,

Plaintiff-Appellant,

versus

SOUTHERN FARM BUREAU LIFE
INSURANCE COMPANY, SOUTHERN
FARM BUREAU & ADOPTING COMPANIES
401 (K), et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(May 13, 2002)**

Before BARKETT and MARCUS, Circuit Judges, and SCHLESINGER*, District Judge.

MARCUS, Circuit Judge:

Plaintiff Craig McDonald appeals from the district court's order dismissing for failure to state a claim his lawsuit against Defendants Southern Farm Bureau Life Insurance Company, et al. ("SFBL") alleging, inter alia, a violation of the Federal Insurance Contributions Act ("FICA"), 26 U.S.C. § 3101, et seq. Because FICA is silent as to whether an employee can sue his employer for the proper payment of FICA taxes, and because nothing in the language, structure, or legislative history of FICA creates by implication a private cause of action, we conclude that the district court properly dismissed McDonald's action and therefore affirm.

I.

FICA establishes a tax that is assessed by the federal government based on wages paid to workers, and the money collected from the FICA tax is used to fund the Social Security Trust Fund. Under a traditional employer-employee relationship, an employer withholds from the employee's paycheck a percentage of the employee's wages based on the applicable FICA wage rate. The money withheld from the employee's paycheck is then paid to the government, making it, in essence, a tax paid

---

*Honorable Harvey E. Schlesinger, U.S. District Judge for the Middle District of Florida, sitting by designation.

by the employee. At the same time, the employer itself pays a FICA "excise tax" that is equal in amount to the percentage wage rate paid by the employee. In a traditional employer-employee relationship, therefore, the employee pays half of the total FICA tax owed and the employer pays the other half. For independent contractors and other self-employed workers, however, there is no separate employer to pay half of the tax. As a result, the self-employed worker pays both the employee's tax and the employer's tax, adding up to the full 100 percent of the money due under FICA. An employer who hires independent contractors does not have to pay any excise taxes for these workers.

From 1988 to 1998, McDonald worked as an insurance agent and agency manager in the Rome, Georgia office of SFBL. Under his arrangement with the company, McDonald was classified as an "independent contractor," and his employment agreement stated that "nothing contained herein shall be construed to create the relationship of employee and employer between you and the Company." McDonald contends, however, that he was in truth a common law employee because SFBL exercised substantial control over his activities by regulating his hours, dictating the manner in which he sold insurance products, providing him with an office, supplies, and secretarial support, and regulating his advertising. Because SFBL classified McDonald as an independent contractor, it did not pay any excise taxes.

3

Instead, McDonald himself was responsible for 100 percent of his FICA tax, paying both the employee's share and the employer's share.

On July 10, 2000, McDonald filed a class action lawsuit against SFBL in the United States District Court for the Northern District of Georgia on behalf of himself and all other workers wrongfully classified as "independent contractors." The complaint included five state common law causes of action as well as two federal claims. The first of these federal claims alleged that SFBL violated FICA, stating that "[b]y misclassifying McDonald and the members of the Plaintiff Class, SFBL failed to pay its portion of McDonald's and the Plaintiff Class members' FICA taxes as required by federal law," and that "SFBL's improper classification caused McDonald and the members of the Plaintiff Class to pay additional FICA taxes that they would not have paid had SFBL properly classified them as employees rather than as independent contractors." The other federal claim sought a declaratory judgment under 28 U.S.C. § 2201 ("the Declaratory Judgment Act") declaring that McDonald and his fellow class members were common law employees of SFBL and therefore liable for only the employee portion of the FICA tax. The state law claims included equitable estoppel, breach of contract, unjust enrichment, money had and received, and negligent and fraudulent misrepresentation through standardized forms and policies.

On September 4, 2001, the district court granted SFBL's motion to dismiss the case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, holding that no private right of action exists under FICA. Without the FICA claim, the district court explained, there was no federal jurisdiction because the Declaratory Judgment Act does not provide an independent source of jurisdiction and the state law claims could not be heard in federal court in the absence of proper federal claims. McDonald then appealed to this Court, arguing that a private right of action does in fact exist under FICA.

## II.

The central issue before us is a simple one: whether the text, structure, or legislative history of FICA creates by implication a private cause of action. Because both parties agree, and there can be no dispute, that FICA itself is silent as to whether an employee can sue his employer for proper payment of FICA taxes, the sole question is whether a private cause of action can be implied under the statute. We analyze de novo the legal propriety of the district court's dismissal of the case on the ground that no such cause of action can be implied. See Abate of Georgia, Inc. v. Georgia, 264 F.3d 1315, 1315 (11th Cir. 2001).

5

In Cort v. Ash, 422 U.S. 66, 95 S. Ct. 2080, 45 L. Ed. 2d 26 (1975), the Supreme Court established a four-part test for "determining whether a private remedy is implicit in a statute not expressly providing one." Id. at 78, 95 S. Ct. at 2088.

> First, is the plaintiff "one of the class for whose especial benefit the statute was enacted" -- that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

Id. (quoting Tex. & Pac. Ry. v. Rigsby, 241 U.S. 33, 39, 36 S. Ct. 482, 484, 60 L. Ed. 874 (1916)) (additional citations omitted).

Since Cort, the Supreme Court has clarified that the first three factors listed are all factors "traditionally relied upon in determining legislative intent." Touche Ross & Co. v. Redington, 442 U.S. 560, 576, 99 S. Ct. 2479, 2489, 61 L. Ed. 2d 82 (1979). Indeed, the "central inquiry" in the Cort analysis is "whether Congress intended to create, either expressly or by implication, a private cause of action." Id. at 575, 99 S. Ct. at 2489. As the Supreme Court recently explained, "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy."

6

Alexander v. Sandoval, 532 U.S. 275, 286, 121 S. Ct. 1511, 1519, 149 L. Ed. 2d 517 (2001) (citations omitted). When a court conducts this analysis, "[s]tatutory intent . . . is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." Id. at 286-87, 121 S. Ct. at 1519-20.

The bar for showing legislative intent is high. "Congressional intent to create a private right of action will not be presumed. There must be clear evidence of Congress's intent to create a cause of action." Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1345 (11th Cir. 1997). Although courts cannot "require evidence that Members of Congress, in enacting the statute, actually had in mind the creation of a private cause of action," the Supreme Court has said that "[t]he intent of Congress remains the ultimate issue, . . . and 'unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.'" Thompson v. Thompson, 484 U.S. 174, 179, 108 S. Ct. 513, 516, 98 L. Ed. 2d 512 (1988) (quoting Northwest Airlines v. Transp. Workers, 451 U.S. 77, 94, 101 S. Ct. 1571, 1582, 67 L. Ed. 2d 750 (1981)). Legislative history can be taken into account where relevant, but the central focus of judicial inquiry must be the "text and structure" of the statute itself. Sandoval, 532 U.S. at 288, 121 S. Ct. at 1520. Indeed,

7

courts "have never accorded dispositive weight to context shorn of text. In determining whether statutes create private rights of action, as in interpreting statutes generally, legal context matters only to the extent it clarifies text." Id. (citation omitted).

An analysis of the Cort factors makes it abundantly clear that no private cause of action may be implied from the language, structure, or legislative history of FICA. First, there is no basis on which to conclude that FICA was enacted for the especial benefit of employees like McDonald. To the contrary, as a review of the statute reveals, FICA is, quite simply, a tax-assessing statute designed to raise revenue for the federal government. All of the provisions of the United States Code codified pursuant to FICA concern taxation rates, deduction and collection procedures, and explanations of what types of employment and wages are covered. See 26 U.S.C. §§ 3101-02, 3111-12, 3121-24, 3128.

To support a claim that FICA was designed to benefit individuals like himself, McDonald argues that this Court should focus not on FICA itself, but rather on the Social Security Act ("SSA"), 42 U.S.C. § 301, et seq., which was passed for the especial benefit of American workers. See, e.g., Soc. Sec. Bd. v. Nierotko, 327 U.S. 358, 364, 66 S. Ct. 637, 640, 90 L. Ed. 718 (1946) ("The purpose of the Federal Old Age Benefits of the Social Security Act is to provide funds though contributions by

8

employer and employee for the decent support of elderly workmen who have ceased to labor. Eligibility for these benefits and their amount depends upon the total wages which the employee has received and the periods in which wages were paid."). According to McDonald, FICA benefits American workers as much as the SSA does because, as mandated by statute, the money raised through the FICA tax must be used exclusively to fund Social Security. See 42 U.S.C. § 911(a) (mandating that FICA collections "shall not be included in the totals of the budget of the United States Government . . . and shall be exempt from any general budget limitation imposed by statute on expenditures and net lending (budget outlays) of the United States Government").

McDonald's argument disregards the crucial distinction between the two statutes. Although FICA and the SSA are inextricably linked, their purposes are vastly different. FICA assesses a tax on employers and employees in order to fund a government program. It is, in all important aspects, no different than any other tax specifically designed to benefit the federal government by raising revenue. The SSA, on the other hand, unambiguously and intentionally provides funds for disabled and retired employees. It is through this statute, and not through FICA, that workers and their families receive financial support when they cease working. Notably, an employee who qualifies for Social Security benefits receives those benefits regardless

of whether his employer has complied with the requirements of FICA. As the district court noted, as long as an employee's wages are properly reported to the Internal Revenue Service ("IRS"), he will receive Social Security benefits even if the employer has completely failed to pay its share of the FICA excise tax. See 42 U.S.C. § 413(a)(2)(A)(ii) (establishing procedure for determining worker eligibility for Social Security based on time worked and wages paid). Simply put, an employee's ability to collect Social Security is in no way dependent on his employer's compliance with FICA. Thus, there would be no need for an employee to sue his employer under FICA in order to collect the Social Security funds designed for his especial benefit.

Under the second prong of Cort -- and plainly the most important one -- there is no indication of any legislative intent, either explicit or implicit, to create a private right of action under FICA. Nothing in the language of the statute, its structure, or its legislative history provides any hint that Congress envisioned private lawsuits to enforce the provisions of this tax-collection law. In fact, the legislative history is completely devoid of any indication that private lawsuits under FICA were even briefly contemplated by Congress. To support his claim, McDonald offers only the argument that allowing a private right of action would be consistent with the broad purpose of the SSA. Aside from the fact, discussed above, that the SSA and FICA are two entirely different acts, the Supreme Court has recently explained that statements

10

about the broad legal context in which a statute was passed are not enough to create a private cause of action. See Sandoval, 532 U.S. at 288, 121 S. Ct. at 1520 ("In determining whether statutes create private rights of action, as in interpreting statutes generally, legal context matters only to the extent it clarifies text.") (citations omitted). McDonald's general observations about the goals of the SSA are plainly insufficient.

We also find wholly unconvincing McDonald's argument that a private cause of action somehow can be implied from a portion of FICA codified at 26 U.S.C. § 3102(b). This provision reads:

> Indemnification of employer. -- Every employer required so to deduct the tax shall be liable for the payment of such tax, and shall be indemnified against the claims and demands of any person for the amount of any such payment made by such employer.

26 U.S.C. § 3102(b). McDonald contends that Congress would not have explicitly indemnified employers if it did not assume that employees would have been able to bring lawsuits under FICA. This contention lacks any textual support. Section 3102(b), which appears as part of the statute's section on deductions from employees' wages, protects employers who properly deduct FICA taxes from an employee's wages against claims by employees that the money withheld and used to pay the tax should have been paid to the employee as part of his salary. Because Congress requires employers to withhold the FICA contribution and pay the excise tax, it included the indemnification provision to protect employers from lawsuits by

11

employees who do not want their salaries reduced in compliance with FICA. Section 3102(b) offers no reason to imply a private cause of action.

Like the first two factors, the third <u>Cort</u> factor also strongly cuts against implying a private right of action under FICA, as doing so would be altogether inconsistent with the underlying legislative scheme established by Congress. Specifically, allowing private lawsuits under the statute would undermine the administrative procedures that have been expressly created in order to assist workers who feel that they have been assessed improper FICA taxes. As the Supreme Court has explained, "it is . . . 'an elemental canon' of statutory construction that where a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies." <u>Karahalios v. Nat'l Fed'n of Fed. Employees</u>, 489 U.S. 527, 533, 109 S. Ct. 1282, 1286-87, 103 L. Ed. 2d 539 (1989) (quoting <u>Transamerica Mortgage Advisors, Inc. v. Lewis</u>, 444 U.S. 11, 19, 100 S. Ct. 242, 247, 62 L. Ed. 2d 146 (1979)) When Congress creates certain remedial procedures, we are, "in the absence of strong indicia of contrary congressional intent, . . . compelled to conclude that Congress provided precisely the remedies it considered appropriate." <u>Id</u>. (quoting <u>Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n</u>, 453 U.S. 1, 15, 101 S. Ct. 2615, 2623, 69 L. Ed. 2d 435 (1981)) (internal punctuation omitted). Quite simply, great caution is necessary because implying a private cause of action in such

a case "would undermine the administrative remedies." <u>Ayres v. Gen. Motors Corp.</u>, 234 F.3d 514, 524 (11th Cir. 2000).

Congress has established a comprehensive regulatory scheme including numerous administrative procedures that allow individuals in McDonald's position to seek relief. First, an aggrieved party can file with the IRS a Form SS-8, "Determination of Employee Work Status for Purposes of Federal Employment Taxes and Income Tax Withholding," which allows the worker to obtain a determination from the IRS as to whether he is an employee or independent contractor for tax purposes. Second, if necessary, the complainant can file with the IRS an administrative claim pursuant to 26 U.S.C. § 6511(a) for a refund of self-employment taxes that he allegedly overpaid. Finally, the taxpayer can sue the government for a refund of his taxes pursuant to 28 U.S.C. § 1346(a)(1). In addition to these remedies, the SSA provides an administrative mechanism through which a worker may seek to correct any errors or omissions in the records of his wages or self-employment income. <u>See</u> 42 U.S.C. § 405(c)(4)-(5). "This mechanism is superintended by the Social Security Administration, the largest adjudicatory body on the face of the earth, and provides the safeguards of an adversary hearing before a professional Administrative Law Judge and eventual judicial review." <u>Salazar v. Brown</u>, 940 F. Supp. 160, 164 (W.D. Mich. 1996). Combined with the procedures available through

13

the IRS, "[t]hese statutes do not admit of a third approach, under which employees and employers would litigate benefit and taxation issues outside the statutory structure and without the presence of the very agencies created by Congress to administer this complicated system." Id. In short, allowing by implication a private lawsuit would interfere with the specific administrative framework and procedures set up by Congress.[1]

In sum, it is clear from an application of the first three Cort factors that Congress did not intend to create a private right of action under FICA. Because the question of legislative intent is the "central inquiry" in this analysis, see Touche Ross, 442 U.S. at 575, 99 S. Ct. at 2489, our conclusion is unaffected by the fact that, under the fourth Cort factor, implying a private cause of action would not offend basic principles of federalism. See Florida v. Seminole Tribe of Fla., 181 F.3d 1237, 1247 (11th Cir. 1999) ("[W]hen an examination of one or more of the Cort factors 'unequivocally reveals congressional intent, there is no need for us to trudge though

---

[1]McDonald argues, nevertheless, that the administrative remedies that currently exist are of no avail to him in this case because they are not designed to provide injunctive relief on a class action basis and because they allow refunds going back only three years. This argument fails, as we cannot imply a private right of action merely because a statute's administrative scheme does not satisfy all of a litigant's preferred remedies. Indeed, implying the right to class action litigation would be particularly anomalous in light of our holding that Congress clearly had no intention of allowing even individual lawsuits under FICA. Again, "we are compelled to conclude that Congress provided precisely the remedies it considered appropriate." Nat'l Sea Clammers Ass'n, 453 U.S. at 15, 101 S. Ct. at 2615.

14

all four of the factors.'") (quoting <u>Liberty Nat'l Ins. Holding Co. v. Charter Co.</u>, 734 F.2d 545, 558 (11th Cir. 1984) (internal quotations and punctuation omitted)). In the absence of any textual, structural, or historical reason to believe that Congress intended to allow a private right of action, and in the face of administrative procedures indicating that it did not, we hold that no private right of action may be implied under FICA.[2]

Accordingly, we AFFIRM the district court's order dismissing McDonald's complaint.[3]

AFFIRMED.

---

[2]Our conclusion is consistent with the holding of the Seventh Circuit that "[e]mployees have no cause of action against employers to recover wages withheld and paid over to the government in satisfaction of federal income tax liability." <u>Edgar v. Inland Steel Co.</u>, 744 F.2d 1276, 1278 (7th Cir. 1984). No other circuit has addressed this issue in a published opinion, and no circuit has explicitly applied the <u>Cort</u> test to FICA.

[3]Since we conclude that no private right of action exists under FICA pursuant to the <u>Cort</u> analysis, we need not address SFBL's alternative argument that McDonald's claim is barred by 26 U.S.C. § 7422.