

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-9-2008

# Umland v. Planco Fin Ser Inc

Precedential or Non-Precedential: Precedential

Docket No. 06-4688

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Umland v. Planco Fin Ser Inc" (2008). *2008 Decisions.* Paper 453.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/453

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 06-4688

———————

CARRIE UMLAND, on behalf of herself
and all others similarly situated,

Appellant

v.

PLANCO FINANCIAL SERVICES, INC.

———————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 05-cv-06806)
District Judge: Honorable J. William Ditter, Jr.

———————

Argued November 6, 2007

Before: SCIRICA, Chief Judge, AMBRO,
and JORDAN, Circuit Judges

(Opinion filed: September 9, 2008)

Robert L. King, Esquire (Argued)
505 North Seventh Street
Suite 3600
St. Louis, MO   63101

      Counsel for Appellant

James N. Boudreau, Esquire (Argued)
Littler Mendelson
1601 Cherry Street, Suite 1400
Three Parkway
Philadelphia, PA   19102

      Counsel for Appellee

---

OPINION OF THE COURT

---

AMBRO, Circuit Judge

Carrie Umland worked for PLANCO Financial Services, Inc. from 2000 to 2005. She argues that PLANCO misclassified her as an independent contractor for several years. She also alleges that, after finally reclassifying her as an employee, PLANCO deducted its share of the Federal Insurance Contributions Act (FICA) taxes—owed as a result of Umland's status as an employee—from her paychecks. The United States

2

District Court for the Eastern District of Pennsylvania dismissed Umland's putative class action, consisting of state-law claims for breach of contract and unjust enrichment, as preempted by federal income tax law. We affirm, albeit for reasons different from those of the District Court.

## I. Facts and Procedural History

In November 2000, Umland began working for PLANCO, a wholly owned subsidiary of The Hartford Financial Services Group, Inc. PLANCO sells annuities, mutual funds, and other financial products at wholesale. Umland served as a Regional Marketing Director for PLANCO. Her job involved marketing financial products, such as mutual funds and insurance, of The Hartford. She was not allowed to affiliate with or sell the products of other financial services companies.

As a Regional Marketing Director, Umland had to perform numerous tasks for PLANCO and comply with company requirements.[1] For example, she underwent training, lived within the boundary of her sales territory, made a required minimum number of sales calls per day, participated in conference calls, and adopted company talking points in her sales calls. Although Umland alleges that PLANCO exerted a

---

[1] We describe these tasks and requirements in a cursory fashion because our decision will not turn on those particular facts.

high degree of control over her work, PLANCO classified Umland and her fellow Regional Marketing Directors as independent contractors rather than employees.

When PLANCO hired Umland, she signed an "Independent Contractor Agreement." As a result of this classification, Umland and her fellow Regional Marketing Directors were required to remit 15.3 percent of their self-employment income in taxes under the Self-Employment Contributions Act (SECA), 26 U.S.C. §§ 1401–03.[2] (SECA imposes the equivalent of the sum of the employee and employer FICA taxes for employees.) Thus, PLANCO did not withhold taxes from Umland's paychecks, nor did it pay employer FICA taxes on Umland's wages. This arrangement continued for over three years.

---

[2] Section 1401(a) "impose[s] for each taxable year, on the self-employment income of every individual, a[n old-age, survivors, and disability insurance] tax equal to" 12.4 percent during taxable years beginning after December 31, 1989. 26 U.S.C. § 1401(a). Section 1401(b) "impose[s] for each taxable year, on the self-employment income of every individual, a [hospital insurance] tax equal to" 2.9 percent during taxable years beginning after December 31, 1985. *Id.* § 1401(b). The sum of these two taxes yields a total self-employment tax of 15.3 percent. Self-employed individuals may deduct half the SECA tax. *See* 26 U.S.C. § 1402(a)(12).

4

In a letter dated December 9, 2003, PLANCO "offered to make [Umland] a [PLANCO] employee as a Regional Marketing Director" with an effective date of January 1, 2004. PLANCO enclosed an "Employee Confidentiality, Non-Solicitation, and Work Product Ownership Agreement" with its offer.[3] Umland alleges that her title and her job characteristics remained the same, notwithstanding the reclassification from independent contractor to employee. What did change was PLANCO's withholding scheme for Umland's paychecks. As of January 1, 2004, PLANCO allegedly withheld 15.3 percent, which equals the sum of two distinct amounts of 7.65 percent each: (1) Umland's employee tax under FICA, 26 U.S.C. § 3101;[4] and (2) PLANCO's employer tax under FICA,

[3] Umland's brief does not state explicitly whether she accepted the offer of employment or signed the agreement. Her brief blurs this factual issue by arguing that "PLANCO unilaterally re-classified its [Regional Marketing Directors] as employees." Umland's Br. 12. But she continued working for PLANCO after January 1, 2004, an undisputed fact that suggests that she did accept and sign the contract, contradicting the adverb "unilaterally" in the above quote from her brief. In addition, Umland asserted to the District Court that the choice-of-law provisions of the employment agreement govern this case, which further suggests that she signed the agreement.

[4] Section 3101(a) "impose[s] on the income of every individual a[n old-age, survivors, and disability insurance] tax equal to" 6.2 percent "of the wages . . . received by him with

5

26 U.S.C. § 3111.[5]  Umland stopped working for PLANCO on July 1, 2005.  Approximately one month later, PLANCO allegedly ceased withholding amount (2), the employer FICA tax, and deducted only amount (1), the employee FICA tax, from the paychecks of its remaining Regional Marketing Directors.

On December 30, 2005, Umland filed a class-action lawsuit, on behalf of all PLANCO's Regional Marketing

respect to employment" during the taxable year 1990 and thereafter.  26 U.S.C. § 3101(a).  Section 3101(b) "impose[s] on the income of every individual a [hospital insurance] tax equal to" 1.45 percent "of the wages . . . received by him with respect to employment" for wages received after December 31, 1985.  *Id.*  § 3101(b).  The sum of these two taxes yields a total employee FICA tax of 7.65 percent.  Wages and employment for purposes of § 3101 are defined in 26 U.S.C. § 3121.

[5] Section 3111(a) "impose[s] on every employer an excise tax [for old-age, survivors, and disability insurance], with respect to having individuals in his employ, equal to" 6.2 percent "of the wages . . . paid by him with respect to employment" during the taxable year 1990 and thereafter.  26 U.S.C. § 3111(a).  Section 3111(b) "impose[s] on every employer an excise tax [for hospital insurance], with respect to having individuals in his employ, equal to" 1.45 percent "of the wages . . . paid by him with respect to employment" after December 31, 1985.  *Id.* § 3111(b).  The sum of these two taxes yields a total employer FICA tax of 7.65 percent.  Wages and employment for purposes of § 3111—as for § 3101—are defined in 26 U.S.C. § 3121.

Directors, seeking recovery of two distinct sums. First, for the period from November 20, 2000 through December 31, 2003, Umland claims that PLANCO owes her and those similarly situated half of the SECA taxes they paid during this time because they should have been classified as employees (in which case the total FICA tax would have been split between an employee FICA tax and an employer FICA tax). Second, for the period from January 1, 2004 through July 1, 2005, Umland claims that PLANCO owes her and those similarly situated the sums withheld from their paychecks corresponding to the employer's share of FICA taxes under 26 U.S.C. § 3111.

Umland, on behalf of the class, seeks to recover these two sums on the basis of three state-law claims outlined in the complaint: (1) breach of contract, because all employment contracts incorporate the requirements of federal law, including FICA, 26 U.S.C. §§ 3101-28; (2) breach of contract, because all employment contracts incorporate the requirements of state law, including Pennsylvania's requirement that "other deductions" not enumerated as authorized by law in the Pennsylvania Administrative Code receive written authorization from employees, 34 Pa. Code § 9.1(13);[6] and (3) unjust enrichment.

---

[6] Section 9.1(13) provides that deductions other than those listed in the previous subsections of § 9.1 must be "authorized in writing by employe[e]s as in the discretion of the Department is proper and in conformity with the intent and purpose of the Wage Payment and Collection Law (43 [Pa. C.S.A.]

7

The complaint applies only legal theories (1) and (3) to the time period from November 20, 2000 to December 31, 2003 [hereinafter "2000–03"], when Umland alleges that she was misclassified as an independent contractor. It applies all three legal theories to the time period from January 1, 2004 to July 1, 2005 [hereinafter "2004–05"], when Umland alleges that PLANCO engaged in wrongful withholding.

In response to Umland's complaint, PLANCO moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. On October 2, 2006, the District Court dismissed the case for lack of subject matter jurisdiction under Rule 12(b)(1). Umland now appeals to our Court.

## II. Jurisdiction and Standard of Review

In granting PLANCO's motion to dismiss, the District Court referred to the motion as having been made under Rule 12(b)(1) for lack of subject matter jurisdiction. Yet PLANCO had moved for dismissal under Rule 12(b)(6) rather than Rule 12(b)(1). We must decide whether the District Court correctly assessed that it lacked jurisdiction and applied the appropriate procedural rule. We have plenary review over district courts' jurisdictional determinations. *In re Phar-Mor, Inc. Sec. Litig.*, 172 F.3d 270, 273 (3d Cir. 1999).

---

§§ 260.1—260.12)." 34 Pa. Code § 9.1(13).

In her complaint, Umland alleged that PLANCO is a citizen of Pennsylvania and that she is a citizen of Washington State. She also alleged that the matter in controversy exceeds $5,000,000, exclusive of interest and costs. Thus, she properly invoked federal subject matter jurisdiction. *See* 28 U.S.C. § 1332(d)(2) (giving district courts jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . (A) any member of a class of plaintiffs is a citizen of a State different from any defendant").

The District Court, as noted, granted the motion to dismiss under Rule 12(b)(1). Yet the only two cases cited in support of its decision dismissed complaints under Rule 12(b)(6) for failure to state a claim. *See McDonald v. S. Farm Bureau Life Ins. Co.*, 291 F.3d 718, 726 (11th Cir. 2002) (affirming District Court's dismissal for failure to state a claim because FICA does not imply a private right of action); *Berger v. AXA Network, LLC*, No. 03-C-125, 2003 WL 21530370, at *4 (N.D. Ill. July 7, 2003) (dismissing federal claim under FICA because the latter does not imply a private right of action and dismissing state-law claims as preempted by the federal regulatory scheme Congress created to implement FICA). Because the issue presented is whether Umland has stated a claim on which relief can be granted, we will construe the District Court's dismissal as though it was granted under Rule 12(b)(6). *See Petruska v. Gannon Univ.*, 462 F.3d 294, 302–03 (3d Cir. 2006) (construing a Rule 12(b)(1) dismissal as a Rule 12(b)(6) dismissal because

9

jurisdiction was not at issue while the legal sufficiency of the plaintiff's claims was).

We have appellate jurisdiction over district courts' final decisions under 28 U.S.C. § 1291. Our standard of review over (what we are construing as) the District Court's dimissal for failure to state a claim is plenary. *Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007).

When considering a district court's grant of a motion to dismiss under Rule 12(b)(6), "we accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). We "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002).

In light of the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955 (2007), we have cautioned that the factual allegations in the complaint must not be "so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). In addition, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.' " *Id.* (alteration in original) (quoting *Twombly*, 127 S. Ct. at 1969 n.8). Moreover,

10

we have interpreted *Twombly*'s emphasis on "plausibility" to mean that the complaint's " '[f]actual allegations must be enough to raise a right to relief above the speculative level.' " *Id.* at 234 (quoting *Twombly*, 127 S. Ct. at 1965).

Despite these new contours, after *Twombly* we adhere to the familiar statements of our standard of review, quoted above from *Buck*, 452 F.3d at 260, and *Pinker*, 292 F.3d at 374 n.7. We accept the complaint's allegations as true, read those allegations in the light most favorable to the plaintiff, and determine whether a reasonable reading indicates that relief may be warranted. *See Phillips*, 515 F.3d at 233 (stating that the above-quoted language from *Pinker* describing the standard of review remains "acceptable" after *Twombly*).

### III.  Classification as an Independent Contractor: 2000–03

Umland alleges that PLANCO wrongly classified her and other Regional Marketing Directors as independent contractors during the 2000–03 period.  As a result of this classification, she owed 15.3 percent of her income from PLANCO in SECA tax. *See* 26 U.S.C. § 1401.  If she had been classified as an employee, by contrast, she would have paid only 7.65 percent of her salary in employee FICA tax.  *See id.* § 3101.[7]  PLANCO

---

[7] If Umland had been classified as an employee, PLANCO, as noted above, would have owed a separate 7.65 percent of her salary under the employer FICA tax.  26 U.S.C. § 3111.

11

contends, among other defenses, that federal law preempts Umland's state-law claims for breach of contract and unjust enrichment.

" '[S]tate law is pre-empted to the extent that it actually conflicts with federal law. Thus, the Court has found pre-emption . . . where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Fasano v. Fed. Reserve Bank of N.Y.*, 457 F.3d 274, 280 (3d Cir. 2006) (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990)). Interference with a comprehensive administrative scheme is one way that state law might impede Congress's goals. *See, e.g.*, *C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 265 (3d Cir. 2004) (deciding "whether the National Flood Insurance Program . . . is sufficiently comprehensive to preempt a state tort suit arising from conduct related to the Program's administration"). In our case, PLANCO points to the Internal Revenue Service's administrative process that allows an employee, by filing an IRS Form SS-8, to request that the IRS determine whether she is an employee or an independent contractor. *See* IRS, Form SS-8: Determination of Worker Status for Purposes of Federal Employment Taxes and Income Tax Withholding, OMB No. 1545-0004 (2006), *available at* http://www.irs.gov/pub/irs-pdf/fss8.pdf (last visited Aug. 8, 2008) [hereinafter "IRS Form SS-8"]. For reasons not in the record (and not known to counsel at oral argument), Umland did not file a form SS-8. She could also have filed an administrative

12

claim for a refund of self-employment taxes pursuant to 26 U.S.C. § 6511(a), or a tax refund suit against the Government under 28 U.S.C. § 1346.

The Court of Appeals for the Eleventh Circuit has noted that "Congress has established a comprehensive regulatory scheme" for resolving disputes over proper classification of employees and independent contractors. *McDonald*, 291 F.3d at 725. The Court stated this as support for its holding that Congress did not intend for FICA to create a private right of action. But the existence of federal administrative remedies for the alleged misclassification as independent contractor, established by Congress, also suggests that Congress intended the administrative remedies to preempt state-law claims. Several district courts have found preemption in this context. *See, e.g. McElwee v. Wharton*, 19 F. Supp. 2d 766, 771 (W.D. Mich. 1998) ("In light of the available legal remedies, there is no need to recognize an equitable right for restitution as to federal employment taxes.").

We agree with PLANCO that permitting Umland's suit to proceed with respect to the 2000–03 damages she allegedly experienced would interfere with the IRS's administrative scheme for handling such disputes. *See* IRS Form SS-8; *see also* Treas. Reg. § 31.3121(d)-1 (defining employees for purposes of FICA); IRS, Internal Revenue Manual, pt. 4, ch. 23, § 6 (2003), *available at* http://www.irs.gov/irm/part4/ch21s07.html (last visited Aug. 20,

13

2008) (describing the "Classification Settlement Program"). Individuals would have less incentive to follow IRS procedures if they could simply bring common-law claims for misclassification as an independent contractor in state court (or in federal court sitting in diversity). We therefore hold preempted by IRS regulations state-law claims for damages based on classification as an independent contractor rather than an employee. *See Fidelity Fed. Savs. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) ("Federal regulations have no less pre-emptive effect than federal statutes."). To the extent that dismissal of Umland's claims applied to the 2000–03 damages, we affirm the District Court's judgment dismissing those claims.

## IV. Withholding of Employer Share of FICA Taxes: 2004–05

Umland also alleges that she experienced damages *after* being reclassified as an employee. Specifically, she alleges—and we must assume it to be true under our standard of review—that PLANCO withheld from her 2004–05 paychecks both the 7.65 percent employee FICA tax of 26 U.S.C. § 3101 and the 7.65 percent employer FICA tax of 26 U.S.C. § 3111.

### A. Breach of Contract Claims

Umland brought two breach-of-contract claims based on "implied terms" of her employment contract. The first is based

14

on FICA, 26 U.S.C. § 3111. The second is based on 34 Pa. Code § 9.1(13), which prohibits unauthorized deductions, but relates back to the alleged violation of FICA to allege that no law authorized the withholding of an additional 7.65 percent of Umland's salary. To bring these statutes into play for her contract claims, Umland appears to rely on the following principle of contract interpretation:

> Laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as if they had been expressly referred to or incorporated in its terms. This principle embraces alike those laws which affect its construction and those which affect its enforcement or discharge.

*Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 130 (1991) (quoting *Farmers & Merchs. Bank of Monroe v. Fed. Reserve Bank of Richmond*, 262 U.S. 649, 660 (1923)). Umland contends that because she has alleged that PLANCO violated both § 3111 and § 9.1(13), she has sufficiently alleged that PLANCO breached her employment contract.

An initial problem is that Umland does not cite any authority applying this broad canon of construction to allow a

15

state-law claim based on a violation of federal tax law. We decline to apply such a broad principle to this tax-withholding context, as doing so here would trump the standard inquiry whether a federal statute creates a private right of action. PLANCO contends, and we agree with respect to Umland's breach-of-contract claims, that Umland's complaint attempts to use state common law to circumvent the absence of a private right of action under FICA.

The Supreme Court has specified four factors used to determine whether a federal statute creates a private right of action: (1) whether the statute was enacted for the benefit of the plaintiff; (2) indication of legislative intent to create a private remedy; (3) consistency with the purposes of the legislative scheme; and (4) whether the cause of action would traditionally come under state law. *Cort v. Ash*, 422 U.S. 66, 78 (1975). In subsequent private-right-of-action cases, the Supreme Court has clarified that the " 'central inquiry' " is " 'whether Congress intended to create, either expressly or by implication, a private cause of action.' " *McDonald*, 291 F.3d. at 723 (quoting *Touche Ross & Co. v. Redington*, 422 U.S. 560, 575 (1979)); *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002) (focusing on congressional intent as evidenced by statutory text); *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001) (same); *cf. Thompson v. Thompson*, 484 U.S. 174, 179–80 (1988) (focusing on congressional intent but looking more broadly to legislative history and allowing that private rights of action could be implied rather than explicit).

16

Our Court has not previously decided whether FICA creates a private right of action. But our sister Court of Appeals for the Eleventh Circuit has analyzed the question in detail. That Court stated in *McDonald* that FICA is a tax-raising statute rather than a benefit-conferring statute, resolving factor (1) against the plaintiff. 291 F.3d at 723. Under factor (2), the Court stated that "the legislative history is completely devoid" of any intention to create a private right of action under FICA. *Id.* at 724. Finally, in reasoning that echoes preemption analysis, it wrote in its analysis of factor (3) that a private right of action would undermine the IRS's administrative procedures. *Id.* at 725. In addition, many district courts have held that FICA did not create a private right of action. *See Powell v. Carey Int'l, Inc.*, 514 F. Supp. 2d. 1302, 1323–24 (S.D. Fla. 2007) (following *McDonald* in response to plaintiff's claim apparently based solely on FICA); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F. Supp. 2d 551, 560–61 (D. Md. 2003) (rejecting claim for employer's failure to pay retirement and medicare taxes brought under FICA itself); *White v. White Rose Food*, 62 F. Supp. 2d. 878, 887–88 (E.D.N.Y. 1999) (rejecting claims brought under FICA and other federal statutes); *Salazar v. Brown*, 940 F. Supp. 160, 164–65 (W.D. Mich. 1996) (rejecting FICA claim); *DiGiovanni v. City of Rochester*, 680 F. Supp. 80, 82–83 (W.D.N.Y. 1988) (holding that no federal cause of action exists under withholding statutes and declining to exercise pendent jurisdiction over the plaintiff's state-law claims).

We agree with the analysis of these courts that FICA does not create a private right of action. Moreover, if we were to read FICA's provisions into every employment contract, we would contradict Congress's decision not to include expressly a private right of action and our belief that Congress did not intend to imply a private right of action either. Because both breach-of-contract claims at root allege FICA violations, we affirm the District Court's dismissal of Umland's breach-of-contract claims with respect to 2004–05 as well.

## B. Unjust Enrichment Claim

Umland claims that PLANCO unjustly enriched itself in 2004–05 by withholding an extra 7.65 percent of Umland's salary, and the salaries of other class members, beyond the 7.65 percent they owed in employee FICA tax. According to the allegations in her complaint, Umland paid a total of 15.3 percent of her salary in FICA taxes—the same percentage she had been paying under SECA during 2000–03 when she was classified as an independent contractor. She alleges that PLANCO used the excess 7.65 percent to pay its employer FICA tax, reaping a benefit by avoiding the burden of that tax.

PLANCO describes the alleged withholding of an extra 7.65 percent of Umland's salary (above and beyond the 7.65 percent rightfully withheld for the employee FICA tax) as an overpayment of the employee FICA tax. We take this to mean that PLANCO views its actions as akin to a clerical mistake.

PLANCO's characterization would place Umland's claim squarely within the scope of 26 U.S.C. § 7422(a), which places restrictions on tax-refund lawsuits and preempts state-law claims:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, *or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary* [of the Treasury], according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

*Id*. For example, the United States Court of Appeals for the Fifth Circuit has held that § 7422 preempts state-law claims against airlines that collected excise taxes on transportation under an expired statute that Congress unexpectedly declined to

19

renew. *Sigmon v. Southwest Airlines Co.*, 110 F.3d 1200, 1204 (5th Cir. 1997).[8]

For her part, Umland calls the alleged withholding of an additional 7.65 percent an illegal assessment of the employer FICA tax on the wrong people. She cites *Kaucky v. Southwest Airlines Co.*, 109 F.3d 349, 350–51 (7th Cir. 1991), which involved the same excise tax on transportation at issue in *Sigmon* and *Brennan*. In a *dictum*, the Court of Appeals for the Seventh Circuit assumed that a taxpayer suit could proceed under state law if the defendant who collected the allegedly invalid tax was either (1) a "con man" or (2) an authorized agent of the IRS who "turns dishonest" and acts in bad faith. *Id.* at 352–53. In other words, Umland argues that—unlike the defendant airlines in *Sigmon, Brennan*, and *Kaucky*—PLANCO lacked "colorable authority" to withhold an additional 7.65

_____

[8] Applying similar reasoning, the Court of Appeals for the Ninth Circuit has held that state-law claims like those at issue in *Sigmon* arose under § 7422 and were properly removed to federal court. *See Brennan v. Southwest Airlines Co.*, 134 F.3d 1405, 1410 (9th Cir. 1998) ("The statute makes clear . . . that a suit to recover either a 'tax' or a 'sum' constitutes a suit for a tax refund."). In that case, the Court did not analyze the issue as one of preemption. But, reaching what amounts to the same result as *Sigmon*, the Court dismissed the claims because the plaintiffs had not exhausted their administrative remedies, which § 7422 requires, and had sued the wrong party (*i.e.*, the airlines rather than the Government, as § 7422 requires). *Id.* at 1412.

percent from her paycheck, *id.* at 352, because the employer FICA tax is an excise tax levied on employers, *see* 26 U.S.C. § 3111.

But even under Umland's characterization, we think her unjust enrichment claim amounts to an allegation that the amount of PLANCO's employer FICA tax was "wrongfully collected" from her. As the Court in *Brennan* pointed out, "§ 7422 applies to *any* suit for *any* sum wrongfully collected in *any* manner." 134 F.3d at 1410 n.7 (emphasis in original). As the Supreme Court has recently remarked with regard to § 7422: "Five 'any's' in one sentence [there were two more than the three noted above] and it begins to seem that Congress meant the statute to have expansive reach." *See U.S. v. Clintwood Elkhorn Mining Co.*, ___ U.S. ___, 128 S. Ct. 1511, 1516 (2008) (holding that claims for a refund of invalid export tax brought under a statute other than § 7422 were barred).[9] Instead of directing courts to characterize the nature of the tax collector—locating it on a spectrum from authorized agent acting in good faith, to once-authorized agent acting in bad faith, to "con man," *Kaucky*, 109 F.3d at 352—we think § 7422 requires taxpayers to file claims with the IRS for tax refunds.

---

[9] Although our case contrasts with *Clintwood* because the taxpayers there sought a refund from the Government, *see id.*, PLANCO is still a "collector" of employment taxes, *see Kaucky*, 109 F.3d at 351(stating that "the firm corresponds to an employee of the [IRS]").

21

We thus hold that § 7422 expressly preempts Umland's unjust enrichment claim. This result protects the integrity of the administrative scheme for tax refunds that Congress has approved and that the IRS has implemented. *See Brennan*, 134 F.3d at 1411 (describing the policy rationales for this result).[10]

Umland argues that PLANCO received the benefit from the 7.65 percent wrongfully collected for her, and thus any repayment must come from PLANCO, not the Government. But the sum of money at issue is a tax, *i.e.*, the employer FICA tax that PLANCO owed to the Government. Umland alleges that the amount withheld from her paycheck was excessive, and that the 7.65 percent at issue was wrongfully collected from her. These allegations track the language of § 7422. That statute required Umland to seek a refund from the IRS, which would in turn seek to collect the employer FICA tax due from PLANCO. Moreover, even if we did not hold that the language of § 7422 expressly preempted Umland's claim, the broad sweep of

---

[10] Umland points out *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 574 (6th Cir. 2007) (*en banc*) (holding that the District Court lacked jurisdiction over shareholders' claims for overreporting of dividends), for the propositions that she was not required to exhaust her administrative remedies before filing suit and that § 7422 does not preempt her claim. We distinguish *Mikulski* from our case because, unlike PLANCO, the employer "did not collect or withhold any taxes" and "was not acting as a collection agent for or on behalf of the IRS." *Id.* at 565.

22

§ 7422—especially as described by the Supreme Court, *see Clintwood*, 128 S. Ct. at 1516—suggests that Congress intended the IRS to occupy the field of tax refunds, preempting claims such as Umland's.

Finally, dismissal for failure to state a claim is appropriate in this case because Umland's complaint has not satisfied our pleading requirements in the wake of *Twombly*. Because she paid 15.3 percent of her salary before and after reclassification, becoming an employee left her with the same after-tax income as before (assuming her salary did not change on January 1, 2004, which she does not allege it did).[11] For Umland's claim to amount to unjust enrichment, she relies implicitly on the allegation that her reclassification as an employee should have resulted in an *increase* of her salary, after taxes, of 7.65 percent. Yet she does not allege any facts that reflect the contours of the new agreement between her and PLANCO that began in January 2004 when she was reclassified as an employee. Specifically, she does not explain whether the new agreement was meant to increase her after-tax income.

In addition, Umland's complaint does not explicitly allege that her paychecks reflected two separate amounts

---

[11] During 2000–03, Umland was entitled to deduct one-half the SECA tax. *See* 26 U.S.C. § 1402(a)(12). For simplicity, our discussion in this paragraph does not adjust for this complication.

withheld—one corresponding to the employee FICA tax, and another to the employer FICA tax. The complaint states only that PLANCO required Umland "to pay PLANCO's employer's share of the FICA tax." Complaint ¶ 92. Yet the success of her unjust enrichment claim depends in part on her avoiding PLANCO's characterization of the FICA taxes withheld from her paychecks as akin to an overpayment, *i.e.*, a single sum paid in excess of what she owed. Her complaint leaves a reader to guess as to how PLANCO effected the additional 7.65 percent of withholding and how that action was reflected on her paychecks. In this context, her complaint needs to allege more facts "to raise a right to relief above the speculative level." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 S. Ct. at 1965). Umland filed her complaint before the Supreme Court decided *Twombly*. Ordinarily, we would grant her leave to amend on this issue. Because we hold that § 7422 preempts Umland's unjust enrichment claim, remand here is unnecessary.

\* \* \* \* \*

For these reasons, the judgment of the District Court is affirmed.

24