OPINION OF THE COURT
CHAGARES, Circuit Judge.
Relator Robert Pritzker appeals the District Court’s dismissal of this qui tam action against defendants Sodexho, Inc., Sodexho America, LLC, Sodexho Marriott Management, Inc., and Sodexho Management, Inc. (“Sodexho”); ARAMARK Corporation and Aramark Educational Services, Inc. (“ARAMARK”); and Compass Group USA, Inc., doing business as Chart-wells (“Chartwells”). We will affirm.
I.
Because we write solely for the benefit of the parties, we will only briefly summarize the essential facts. Pritzker filed this qui tam action by filing a complaint, pro se, under seal in the District Court for the Eastern District of Pennsylvania on October 30, 2003. He filed an amended complaint, represented by counsel, on August 1, 2007. Pritzker alleges that the defendants caused the submission of false claims in connection with the National School Lunch Program and the School Breakfast Program, in violation of 31 U.S.C. §§ 3729(a)(1) and 3729(a)(2). These federal school programs are administered by the Food and Nutrition Service (“FNS”) of the United States Department of Agriculture (“USDA”). FNS provides grants to the relevant State Agencies (“SAs”), who in turn distribute these funds to the School Food Authorities (“SFAs”) responsible for administering the federal school food programs in individual school districts. Many SFAs operate their own school food programs, but some SFAs contract with food service management companies (“FSMCs”) such as the defendants to manage and operate the lunch and breakfast programs in their school districts.
Pritzker alleges that the defendants caused SFAs and SAs to certify falsely compliance with the regulations governing the National School Lunch Program and the School Breakfast Program, in two different ways. First, Pritzker alleges that the defendants retained rebates and credits they received from their suppliers, in violation of regulations requiring that costs reimbursed in cost-reimbursable contracts be net of any rebates or credits (the “rebate claims”). Second, Pritzker alleges that the defendants purchased food and supplies from higher cost national distributors who offered to pay rebates and credits rather than from lower cost regional distributors, in violation of procurement regulations requiring free and open competition (the “procurement claims”).
Before Pritzker filed his complaint, several government agencies had investigated the issues underlying the rebate claims. In 1996, the General Accounting Office published a report on the “Role and Impacts of Private Food Service Companies.” Joint Appendix (“J.A.”) 125-190 (“1996 GAO Report”). The 1996 GAO Report observed “[flood service contracts vary in their treatment of rebates and discounts received by the food service company when it purchases food for the food authorities.” J.A. 132. Of the contracts reviewed for the report, 40 percent did not address rebates or discounts, 37 percent required the FSMCs to pass through rebates and discounts, and 18 percent permitted FSMCs to retain rebates and discounts. J.A. 163.
Beginning in 2001, the USDA’s Office of Inspector General (“OIG”) conducted a series of audits examining various issues regarding the federal school food programs, including the retention of rebates by FSMCs. This investigation culminated in an audit report published April 30, 2002 (the “April 2002 Audit Report”). J.A. 329- *789 370. The objective of this report was “to determine whether sufficient controls existed to ensure that management companies complied with program requirements in crediting [SFAs] for the value of USDA-donated commodities and purchase discounts and rebates.” J.A. 331. The report disclosed that:
Two management companies that maintained cost-reimbursable contracts nationwide profited at the expense of 7 of the 19 [SFAs] we reviewed by retaining over $280,000 in discounts and rebates they received on purchases made for their food service operations. To accomplish this, the management companies amended, eliminated, or ignored terms in the requests for proposal issued by the [SFAs], Contrary to FNS regulations, the management companies were able to include contract terms that favored them, because FNS did not mandate specific contract terms and provisions.
These 2 management companies contracted with over 18 percent of the 1,648 SFA’s that had management contracts nationwide.
J.A. 332; see also J.A. 340. The results of this April 2002 Audit Report were also highlighted in a newspaper article, J.A. 363, and congressional testimony, J.A. 432.
In response to these OIG audits, FNS promulgated new regulations explicitly requiring SFAs to include contract terms prohibiting FSMC retention of rebates and other credits. See Procurement Requirements for the National School Lunch, School Breakfast and Special Milk Programs, 69 Fed.Reg. 78340 (Dec. 30, 2004). The proposed rules were issued in 2004, and the regulations became effective in 2007.
The District Court entered a final order dismissing the complaint on March 6, 2009, 2009 WL 579380. The District Court dismissed the rebate claims for lack of subject matter jurisdiction, holding that the False Claim’s Act jurisdictional bar, 31 U.S.C. § 3730(e)(4), precluded it from exercising jurisdiction.[1] The court concluded that “critical elements of the Relator’s allegations, indeed, the fraud itself, were public long before Relator filed suit.” J.A. 16. The “meat and potatoes of the fraud — retention of rebates despite regulations requiring those rebates to be passed through to the SFAs — was revealed” in the April 2002 Audit Report, and Pritzker “merely molds this publicly disclosed regulatory violation into a false certification theory....” Id. The court also held that Pritzker was not an original source of the information underlying the rebate claims. The court dismissed the procurement claims for failure to state a claim under Fed. R. Civ. Proc. 12(b)(6), holding that although the procurement regulations required SFAs to engage in competitive bidding when contracting with FSMCs, these regulations did not require competitive bidding in the FSMCs’ subsequent procurement of food and supplies.
Pritzker timely appealed.
II.
The District Court had jurisdiction, if at all, pursuant to 31 U.S.C. §§ 3730(b)(1) and 3732(a), and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court’s dismissal of the rebate claims based on the statute’s jurisdictional bar, see, e.g., United States ex rel. Dunleavy v. County of Delaware, 123 F.3d 734, 737 (3d Cir.1997) (citation omitted), and over the District Court’s *790 dismissal of the procurement claims for failure to state a claim, see, e.g., Umland v. Planco Financial Services, Inc., 542 F.3d 59, 63-64 (3d Cir.2008).
III.
Pritzker’s first argument on appeal is that the District Court erred by dismissing the rebate claims as barred by § 3730(e)(4). The False Claims Act bars qui tam suits where the fraud has been publicly disclosed in certain enumerated sources prior to the commencement of the suit, unless the relator was the original source of the information.[2] 31 U.S.C. § 3730(e)(4). Section 3730(e)(4) provides:
(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or [GAO] report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
(B) For purposes of this paragraph, “original source” means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

Id.

We hold that the District Court properly dismissed the rebate claims because the court lacked jurisdiction over these claims pursuant to § 3730(e)(4). We hereby adopt the careful and detailed analysis employed by Judge Schiller on this issue.[3]
IV.
Pritzker’s second argument is that the District Court erred by dismissing the procurement claims for failure to state a claim. The “full and open competition” regulations apply only to grantees and subgrantees of federal funds, in this case SAs and SFAs. See 7 C.F.R. §§ 3016.36(a) (requiring that grantees and subgrantees follow the listed procurement standards), 3016.36(c)(1) (requiring “full and open competition” in all “procurement transactions”). Pritzker acknowledges that FSMCs are not directly covered by these regulations but argues that since the defendants procured food and supplies on behalf of SFAs, the defendants’ failure to employ competitive bidding caused the SFAs to falsely certify compliance with the regulations. Pritzker cannot, however, identify any regulation requiring competitive bidding on the part of FSMCs. As the National School Lunch Program regulations make clear, an SFA is required to “[a]dhere to the procurement standards ... when contracting with the food service management company.” 7 C.F.R. § 210.16(a)(1) (emphasis added). The SFAs, as subgrantees, are required to conduct competitive bidding when selecting an FSMC, see 7 C.F.R. § 3016.36(c)(1), but Pritzker cannot identify any authority suggesting that these procurement regulations reach any deeper into the supply chain. We agree with the District Court that Pritzker has failed to state a claim with respect to the procurement claims.
*791 V.
For the foregoing reasons, we will affirm the judgment of the District Court.

. As an alternative basis for dismissing the rebate claims, the District Court also concluded that Pritzker had failed to allege a false claim, because the regulations did not clearly prohibit the defendants' conduct until they were revised in 2007.

. Counsel for Pritzker conceded during oral argument that Pritzker was not an "original source” for purposes of § 3730(e)(4).

. The District Court also concluded that, even if the rebate claims were not jurisdictionally barred, Pritzker failed to state a claim because he could establish that the claims submitted by SAs and SFAs were false or fraudulent. Because we conclude that the rebate claims are barred by § 3730(e)(4), we do not reach this issue.