Dissenting opinion filed by Circuit Judge O’Malley. Wallach, Circuit Judge. Appellant New York and Presbyterian Hospital (“the Hospital”)[1] sued Appellee the United States (“the Government”) in the U.S. Court of Federal Claims, alleging that Internal Revenue Code § 3102(b) (2012) entitled the Hospital to recover money paid to its medical residents to settle related litigation in the U.S. District Court for the Southern District of New York (“the District Court”). The Government filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims. The Court of Federal Claims granted the Government’s Motion to Dismiss, holding that § 3102(b) is not a money-mandating source of substantive law, as required for the Court of Federal Claims to have jurisdiction pursuant to 28 U.S.C. § 1491(a)(1) (2012) (“the Tucker Act”). See N.Y. & Presbyterian Hosp. v. United States, 128 Fed.Cl. 363, 364-65 (2016); see also J.A. 1 (Final Judgment). The Hospital appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3). We reverse and remand. Background [2] I, The Relevant Statutory and Regulatory Framework Pursuant to the Federal Insurance Contributions Act (“FICA”), I.R.C. §§ 3101-3128, employees and employers each pay taxes based on wages paid to employees. See id. §§ 3101 (Tax on Employees), 3111 (Tax on Employers). Generally, the employee’s FICA taxes are “collected by the employer of the taxpayer[] by deducting the amount of the tax -from the wages as and when paid.” Id. § 3102(a). The subsection at issue on appeal, § 3102(b), further provides that “[e]very employer required so to deduct the tax shall be liable for the payment of such tax, and shall be indemnified against the claims and demands of any person for the amount.of any such payment made by such employer.” There are certain exceptións to' the FICA tax. Relevant here, under the student exception, FICA taxes do not apply to wages for “service performed in the employ of ... a school, college, or university ... if such service is performed by a student who is enrolled and regularly attending classes at such school, college, or university.” Id. § 3121(b)(l0). Although the Internal Revenue Service (“IRS”) determined that “medical residents were not eligible for the student exception and required hospitals employing medical residents to withhold the employee share of FICA taxes from residents’ paychecks and pay the withheld amounts and the employer share to the [Gjovernment,” the scope of the student exception became subject to litigation. N.Y. & Presbyterian Hosp., 128 Fed.Cl. at 365 (citations omitted). During the pendency of that litigation, the IRS allowed either employers or medical residents to file protective refund claims to preserve their elaims for refunds of the FICA taxes. Id.) see Treas. Reg. § 31.6402(a)-2(a), (b) (1960). In 2004, the IRS implemented a regulation excluding medical residents from the student exception for services provided after April 1, 2005. N.Y. & Presbyterian Hosp., 128 Fed.Cl. at 365; see Student FICA Exception, 69 Fed. Reg. 76,404, 76,408-10 (Dec. 21, 2004); see also Mayo Found, for Med. Educ. & Research v. United States, 562 U.S. 44, 60, 131 S.Ct. 704, 178 L.Ed.2d 588 (2011) (holding that the “rule is a reasonable construction of what Congress has said”). However, in 2010, “the IRS decided that ... medical residents could qualify for the student exception for tax periods ending before April 1, 2005,” such that “hospitals and [medical] residents who had filed protective refund claims for tax periods before April 1, 2005[,]. would be able to obtain refunds of the FICA taxes withheld from residents’ wages.” N.Y. & Presbyterian Hosp., 128 Fed.Cl. at 365 (citations omitted); see J.A. .37 (IRS News Release). II. The District Court Litigation In August 2013, former medical residents (“the District Court Plaintiffs”) sued the Hospital in the District Court, alleging that the Hospital had not filed protective refund claims between January 1995 and June 2001, and asserting claims of fraud, constructive fraud, breach of fiduciary duty, negligent misrepresentation, negligence, breach of contract, and unjust enrichment. See Childers v. N.Y. & Presbyterian Hosp., 36 F.Supp.3d 292, 298, 300 (S.D.N.Y. 2014); see J.A. 38-74. The Hospital filed a motion to dismiss, see J.A 75-102, arguing that, inter alia, the District Court Plaintiffs’’, claims were “disguised tax refund suits,” Childers, 36 F.Supp.3d at 303, and .Internal Revenue Code § 7422 “bars any suit to recover a tax unless a timely refund claim has been made,” id. at 302; see I.R.C. § 7422(a) (providing, in relevant part, that “[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... until a claim for refund or credit has been duly filed” with the IRS). The District Court denied the Hospital’s Motion to Dismiss, holding that the District Court Plaintiffs’ claims “do not arise out of the Hospital’s collection of taxes[ ] and therefore do not implicate the rationale for excusing the employer as tax collector from liability for tax refunds” but rather out of “independent actions and omissions” like failing “to file protective refund claims.” Childers, 36 F.Supp.3d at 303. After the District Court declined the Hospital’s request to certify its denial of the Hospital’s Motion to Dismiss for immediate appeal, see id. at 315, the Hospital petitioned for writs of mandamus, e.g., J.A. 117, each of which the U.S. Court of Appeals for the Second Circuit denied, J.A. 157. The Hospital decided to pursue settlement and, in November 2015, the Hospital and the District Court Plaintiffs entered into a settlement agreement, whereby the Hospital agreed to pay the District Court Plaintiffs $6,632,000. See J.A. 346, 348; see also J.A. 261. Relevant here, the Settlement Agreement provides that the settlement award “can be appropriately characterized as a refund for the amount of FICA taxes previously withheld by the Hospital.” J.A. 275. Upon approving the the Settlement Agreement, the District Court dismissed the District Court Plaintiffs’ claims. See J.A. 358. III. The Court of Federal Claims Litigation In April 2016, the Hospital filed its Complaint in the Court of Federal Claims,[3] arguing that § 3102(b) indemnified the Hospital from the District Court Plaintiffs’ claims and seeking, inter alia, reimbursement of the $6,632,000 paid to the District Court Plaintiffs under the Settlement Agreement. J.A. 34-35. The Government filed its Motion to Dismiss, arguing that “the phrase ‘shall be indemnified’ in [§ ] 3102(b) is not properly read to require the [G]overment to reimburse an employer that is sued in connection with the collection of FICA taxes." N.Y. & Presbyterian Hosp., 128 Fed.Cl. at 369. The Court of Federal Claims analyzed FICA’s statutory framework and agreed with the Government, holding that “[§ ] 3102(b) is ... an immunity provision and that a contrary reading would undermine the statutory refund scheme contrary to Congress’ intent.” Id. at 373. Discussion I. Standard of Review and Legal Standard We review the Court of Federal Claims’ dismissal of an action for lack of subject matter jurisdiction de novo, Coast Prof'l, Inc. v. United States, 828 F.3d 1349, 1354 (Fed. Cir. 2016), and its attendant factual findings for clear error, see Hymas, 810 F.3d at 1317. Pursuant to the Tucker Act, the Court of Federal Claims has jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. 28 U.S.C. § 1491(a)(1). The Tucker Act is “only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. ... [T]he Act merely confers jurisdiction upon [the Court of Federal Claims] whenever the substantive right exists.” United States v. Testan, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (emphasis added) (citation omitted). Therefore, “a plaintiff must identify a separate source of substantive law that creates the right to money damages. ... [T]hat source must be ‘money-mandating.’ ” Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part) (citations omitted). Although the waiver of sovereign immunity must be unequivocal, see United States v. White Mountain Apache Tribe, 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003), the money-mandating source of substantive law may be express or implied, see United States v. Mitchell, 463 U.S. 206, 217 n.16, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). In Mitchell, the Supreme Court reaffirmed that a plaintiff “must demonstrate that the source of substantive law ... relie[d] upon can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.” Id. at 216-17, 103 S.Ct. 2961 (emphasis added) (internal quotation marks, citation, and footnote omitted). Subsequently, the Supreme Court clarified the “fairly be interpreted” standard: This fair interpretation rule demands a showing demonstrably lower than the standard for the initial waiver of sovereign immunity. ... It is enough, then, that a statute creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in damages. While the premise to a Tucker Act claim' will not be lightly inferred, a fair inference will do. White Mountain, 537 U.S. at 472-73, 123 S.Ct. 1126 (emphases added) (internal quotation marks and citations omitted). The Supreme Court also explained that “explicit authorization of a damages remedy” may be required when there are “strong indications that Congress did not intend to mandate money damages,” such that “a fair inference will require an express provision[ ] when the legal current is otherwise against the existence of a cognizable claim.” Id. at 478, 123 S.Ct. 1126.[4] II. The Court of Federal Claims Erred in Concluding • that It Lacked ‘Subject ■. ■ Matter Jurisdiction over the Hospital’s Complaint The sole issue on appeal is whether § 3102(b)’s “shall • be indemnified” language is a money-mandating source of substantive law.[5] See Appellant’s Br. 2; Appel-lee’s Br. 3. The Hospital argues that § 3102(b) is money-mandating because “the words ‘shall be indemnified’ • can be fairly-interpreted to require the Government to pay monetary compensation,” Appellant’s Br. 27 (capitalization modified), whereas ⅛ the Government argues “§ 3102(b) cannot ‘fairly be interpreted’ to mandate compensation by the [Fjederal [Government for damages sustained” because “§ 3102(b) is an immunity provision, not a reimbursement, provision,” Appellee’s Br. 24. Because § 3102(b) is reasonably amenable to an interpretation that it mandates the Government to reimburse FICA taxes paid by an employer, we hold that § 3102(b) is money-mandating and that the Court of Federal Claims erred in concluding that it lacked subject matter jurisdiction over the Hospital’s Complaint.[6] A. The Plain Language of § 3102(b) We begin with the plain language of § 3102(b). See BedRoc Ltd. v. United States, 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004) (“[OJur inquiry begins with the statutory text[] and ends there as well if the text is. unambiguous.” (citations omitted)). “It is a fundamental canon of statutory construction that ... words will be interpreted as taking their ordinary, contemporary, common meaning,” which may be derived from “[djictio-naries from, the era of [the statutory provision's enactment.” Sandifer v. U.S. Steel Corp., — U.S. -, 134 S.Ct. 870, 876, 187 L.Ed.2d 729 (2014) (internal quotation marks and citation .omitted). Because the common meaning of “indemnified”[7] at the time of § 31Q2(b)’s enactment contempláis ed reimbursement, § 3102(b) is “reasonably amenable to the reading that it mandates a right of recovery in damages.” White Mountain, 537 U.S. at 473, 123 S.Ct. 1126. Three contemporaneous dictionaries support the conclusion that the plain meaning of “indemnified” includes monetary compensation.[8] First, the 1933 Oxford English Dictionary defined “indemnify” to mean, inter alia: “1. ... To preserve, protect, or keep free from, secure against (any-hurt, harm, or loss); to secure against legal responsibility for past or future actions or events; to give an indemnity to. ... 2. To compensate (a person, etc.) for loss suffered, expenses incurred, etc.” Indemnify, The Oxford English Dictionary (1st ed. 1933) (italics omitted); see Indemnification, The Oxford English Dictionary (1st ed. 1933) (defining “indemnification” to mean, inter alia, “[t]he- action ■ of compensating for actual loss or damage sustained; also the fact of being compensated”); In-, demnity, The Oxford English Dictionary (1st ed. 1933) (defining “indemnity” to mean, inter alia, “[a] legal exemption from the penalties or liabilities incurred by any course of action” and “[c]ompensation for loss or damage incurred,” i.e., “[a] sum paid by way of compensation”). Second, both the 1917 and 1942 editions of Webster’s New International Dictionary of the English Language defined “indemnify” similarly, with the 1917 version defining the term to mean: “1. To save harmless; to secure against loss or damage. ... 2. To make restitution or compensation to, as- for a loss, damage, etc.; to make whole; to reimburse; to compensate; also, to make good (a loss).” Indemnify, Webster’s New Int’l Dictionary of-the English Language (1st ed. 1917); see Indemnify, Webster’s New Int’l Dictionary of the English Language (2d ed. 1942) (similar); see also Indemnification, Webster’s New Int’l Dictionary of the English Language (1st ed. 1917) (defining “indemnification” to mean, inter alia, a “process of indemnifying, preserving, or securing against loss, damage, or penalty; reimbursement of. loss, damage, or penalty; the state of being indemnified” and defining “indemnity” to mean, inter alia, “^Indemnification, compensation, or remuneration for loss, damage, or injury sustained”); Indemnification, Webster’s New Int’l Dictionary of the English Language (2d ed. 1942) (similar). Third, and finally, the 1933 version of Black’s Law Dictionary defined “indemnify” to mean: “To save harmless; to secure against loss or damage; to give security for the reimbursement of a person in case of an anticipated loss falling upon him. ... Also to make good; to compensate; to make reimbursement to one of a loss already incurred by him.” Indemnify, Black’s Law Dictionary (3d ed. 1933); see Indemnity, Black’s Law Dictionary (3d ed. 1933) (stating that “indemnity” “is also used to denote a compensation given to make the person whole from a loss already sustained”). Based on a review of these three contemporaneous dictionaries, the plain meaning of “indemnify” included monetary compensation at the time of § 3102(b)’s enactment. Not only do all three dictionaries include “to compensate” in their definitions, Indemnify, Webster’s New Int’l Dictionary of the English Language (1st ed. 1917); see also Indemnify, Webster’s New Int’l Dictionary of the English Language (2d ed. 1942); Indemnify, The Oxford English Dictionary (1st ed. 1933); Indemnify, Black’s Law Dictionary (3d ed. 1933), two discuss reimbursement, Indemnify, Webster’s New Int’l Dictionary of the English Language (1st ed. 1917); see also Indemnify, Webster’s New Int’l Dictionary of the English Language (2d ed. 1942); Indemnify, Black’s Law Dictionary (3d ed. 1933), the very relief that the Hospital seeks here.[9] Section 3102(b) thus is “reasonably amenable to the reading that it mandates a right of recovery in damages.” White Mountain, 537 U.S. at 473, 123 S.Ct. 1126.[10] The Government’s counterarguments are unpersuasive. Echoing the Court of Federal Claims’ erroneous reasoning, the Government argues that “dictionaries during the time of enactment of ... § 3102(b) consistently defined the terms ‘indemnify’ and ‘indemnity,’ in the first definition or sense of the word, to mean immunity from liability.” Appellee’s Br. 30 (emphasis added); see N.Y. & Presbyterian Hosp., 128 Fed.Cl. at 370 (“[T]he court- finds that the better reading of the word comes from the primary definitions in the above-cited dictionaries, which nearly consistently defined ‘indemnify’ first to mean an exemption from liability.”). This argument fails for at least three reasons. First, the fair interpretation standard used to determine whether a statute is money-mandating does not require courts to evaluate whether the “first” or “primary” meaning of the statute mandates compensation.[11] Instead, it requires courts to evaluate whether the statute is “reasonably amenable to the reading that it mandates a right of recovery in damages.” White Mountain, 537 U.S. at 473, 123 S.Ct. 1126 (emphasis added). Second, the first definition in each of the three dictionaries uses terms like “protect,” “save harmless,” and “secure against,” but the dictionaries themselves indicate that the order of the definitions does not reflect the plain or most widely accepted meaning of the terms as understood at the time. For instance, the 1933 version of the Oxford English Dictionary states “that sense is placed first which was actually the earliest in the language: the others follow in the order in which they appear to have arisen.” Preface to Oxford English Dictionary, at xxxi (1st ed. 1933) (reprinted in 1961); cf. Explanatory Notes to Webster’s Third New Int’l Dictionary, at 17a (1986) (stating that the ordering of senses “does not evaluate senses or establish an enduring hierarchy of importance among them”). Third, even if the meaning of indemnify were limited to the first definitions, those definitions still contemplate monetary compensation. See, e.g., Secure, Webster’s New Int’l Dictionary (2d ed. 1942) (defining “secure” to mean “[t]o give adequate pledge of payment”); Secure, Black’s Law Dictionary (3d ed. 1933) (defining “secure” to mean, inter alia, “to assure of payment” and “make certain the payment of a debt or discharge of an obligation”). The order of the definitions neither matters under the relevant legal standard nor indicates whether the common understanding of “indemnify” included monetary compensation at the time § 3102(b) was enacted. The Government also avers that “the Hospital’s reading of § 3102(b) as a reimbursement provision cannot be squared with the first clause of the statute” because it would make little sense to read the very next clause of the statute as authorizing employers who have so collected and paid FICA taxes to the IRS to turn around and, at their own whim, pay the “claims” and “demands” of their employees ..., and then be entitled to full reimbursement from the United States for doing so. Appellee’s Br. 32-33. Although it is true that “[statutes should be interpreted to avoid ... unreasonable results whenever possible,” Am. Tobacco Co. v. Patterson, 456 U.S. 63, 71, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982), it also is true that “[t]he preeminent canon of statutory construction requires us to presume that the legislature says in a statute what it means and means in a statute what it says there,” BedRoc, 541 U.S. at 183, 124 S.Ct. 1587 (internal quotation marks, brackets, and citation omitted). As we explained above, the plain language of § 3102(b) is reasonably amenable to an interpretation that it mandates reimbursement. Therefore, even if we were to agree that the Hospital’s interpretation leads to unreasonable results, “it is for Congress, not this [c]ourt, to rewrite the statute.” Blount v. Rizzi, 400 U.S. 410, 419, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971).[12] • -In sum, we conclude that, at the time of § 3102(b)’s enactment, “indemnify” was commonly understood to mean “to compensate” and “to reimburse,” thereby supporting the conclusion that § 3102(b) is reasonably amenable to an interpretation that it is money-mandating. B, Section 3102(b)’s Relationship to Other Provisions of the Internal Revenue Code Other provisions of the Internal Revenue Code also may inform our interpretation of § 3102(b). See Davis v. Mich. Dep’t of the Treasury, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989) (“It is a fundamental canon of'statutory construction that the words of a statute must be read in their context and with a view to their 'place in the overall statutory scheme.”). Three sections of the Internal Revenue Code, specifically §§ 3202(b), 3403, and 7422, further support our conclusion that § 3102(b) is reasonably amenable to an interpretation that it is money-mandating. First, both § 3202(b), which is the counterpart to § 3102 for railroad employers and employees,[13] and § 3403, which concerns the withholding of taxes by an employer, provide that the “employer ... .shall not be liable to any person for the amount of any such payment” for taxes deducted, I.R.C. §§ 3202(b), 3403 (emphasis added),[14] such that employers are immunized from employee suits for reimbursement of taxes deducted by the- employer. Because §§ 3202(b) and 3403 are structured similarly to § 3102(b) but provide that the employer “shall not be liable” rather than that the employer “shall be indemnified)” we may presume that Congress intended these phrases to have different meanings. See Sebelius v. Cloer, 569 U.S. 369, 378, 133 S.Ct. 1886, 185 L.Ed.2d 1003 (2013) (“We have long held that where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.” (internal quotation marks, brackets, and citation omitted)). Second, § 7422 provides that taxpayers “may bring ‘[n]o suit’ in ‘any court’ to recover ‘any internal revenue tax’ or ‘any sum’ alleged to have been wrongfully collected ‘in any manner,’ ” United States v. Clintwood Elkhorn Mining Co., 553 U.S. 1, 7, 128 S.Ct. 1511, 170 L.Ed.2d 392 (2008) (quoting I.R.C. § 7422(a)), and that “[a] suit or proceeding ,.. may bé maintained only against the United States,” I.R.C. § 7422(f)(1). The Supreme Court explained that § 7422 “clearly state[s] that taxpayers seeking refunds of unlawfully assessed taxes must comply with the [Internal Revenue] Code’s refund scheme before bringing suit.” Clintwood Elkhorn, 553 U.S. at 8, 128 S.Ct. 1511. As the Government conceded, see J.A. 399 (Q: “In a real—in a perfect world, would this District Court have dismissed this case under [§ ] 7422?” A: “I think that’s—I think that was the proper thing to do.”), the District Court should have interpreted § 7422 so that the Hospital was immunized from the District Court Plaintiffs’ Complaint and dismissed their claims, see Clintwood Elkhorn, 553 U.S. at 9, 128 S.Ct. 1511 (stating that the nature of the claims “does not matter” because, “[i]f the [taxpayers]’ claims are subject to the [Internal Revenue] Code provisions, those claims are barred whatever the source of the cause of action”). Because § 7422 plainly immunizes employers from claims by employees for the recovery of any internal revenue tax alleged to have been wrongfully collected, see Clintwood Elkhorn, 553 U.S. at 7-8, 128 S.Ct. 1511, we conclude that § 7422 demonstrates that Congress knew how to craft an immunity provision when it so -desired, see Cloer, 569 U.S. at 378, 133 S.Ct. 1886.[15] C. Legislative History Courts also may rely on legislative history to inform their interpretation of statutes. See Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994). The legislative history of § 3102(b) further supports our conclusion that § 3102(b) is reasonably amenable to an interpretation that it is money-mandating. The only relevant legislative history identified by either the parties or this court is the House Report on § 802(a) of the Social Security Act, § 3102(b)’s predecessor. See Appellant’s Br. 29-30; Appel-lee’s Br. 33-34. The-House Report states that, “[t]o protect the employer, he is in-damnified against any claims and demands with respect to that part of the wages of the employee which he withheld, up to the correct amount withheld and paid to the United States.” H.R. Rep. No. 74-615, at 30 (1985). By providing for indemnification up to the “correct amount,” the House Report indicates that Congress understood “indemnification” to contemplate the payment of money. If read otherwise, it would allow an employer to sue for more than the correct amount. Thus, we hold that § 3102(b) is a money-mandating provision, in light of the statute’s text, structure, and legislative history. Conclusion We have considered the parties’ remaining arguments and find them unpersuasive. Accordingly, the Final Judgment of the Court of Federal Claims is REVERSED AND REMANDED Costs Costs to the Hospital. , ■ The Hospital is the successor of two entities that merged in 1998: The Society of The New York Hospital and The Presbyterian Hospital. J.A. 30. For ease of reference, we refer to all three entities, individually and collectively, as the Hospital. . The parties do not contest the Court of Federal Claims' recitation of the relevant facts, see Appellant's Br. 3-17; Appellee’s Br. 3-17, which it properly derived from the Hospital’s complaint, see N.Y. & Presbyterian Hosp., 128 Fed.Cl. at 365-67; see also Hymas v. United States, 810 F.3d 1312, 1317 (Fed. Cir. 2016) (explaining that the court accepts as true uncontroverted factual allegations in a complaint when the parties dispute jurisdiction). Accordingly, we cite to the Court of Federal Claims’ recitation of the facts. . Following the denial of certification for immediate appeal, the Hospital filed a third-party complaint in the District Court that listed the Government as a third-party defendant, J.A. 158-67; however, the District Court later dismissed the Third-Party Complaint without prejudice at the Hospital's request, N.Y. & Presbyterian Hosp., 128 Fed.Cl. at 366. When the Hospital originally sued in the Court of Federal Claims in June 2015, the Court of Federal Claims dismissed that case without prejudice because it was filed while the Hospital’s Third-Party Complaint was pending in the District Court, such that the Court of Federal Claims did not have jurisdiction over the case pursuant to 28 U.S.C. § 1500. Id. at 367; see 28 U.S.C. § 1500 (“The ... Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff ... has pending in any other court any suit or process against the United States .... ”). . While the Court of Federal Claims articulated the fair interpretation standard, N.Y. & Presbyterian Hosp., 128 Fed.Cl. at 367, it may have applied a more demanding standard, see id. at 370 (stating that “ ‘indemnified’ does not necessarily mean a right to ‘reimbursement’ ” and that "the better reading of the word comes from the primary definitions” (emphases added)); see also Int'l Custom Prods., Inc. v. United States, 843 F.3d 1355, 1359-60 (Fed. Cir. 2016) (assessing for error based on the lower court’s application of the law rather than the recited standard). Noting that the Supreme Court rejected a heightened standard in White Mountain, we reiterate that there is no requirement of a "plain and explicit statement" that money damages are due. 537 U.S. at 477, 123 S.Ct. 1126. To the extent the Court of Federal Claims believes there are "strong indications that Congress did not intend to mandate money damages,” such that an "express provision” is necessary, id. at 478, 123 S.Ct. 1126, it should have articulated such a conclusion rather than expected this court to divine its rationale. . Section 3102(b) provides, in its entirely, that "[e]very employer required so to deduct the tax shall be liable for the payment of such tax, and shall be indemnified against the claims and demands of any person for the amount of any such payment made by such employer.” . , Although we hold that § 3102(b) is "reasonably amenable” to this interpretation in accordance with the Supreme Court's standard, White Mountain, 537 U.S, at 472-73, 123 S.Ct. 1126, we believe the only reasonable interpretation of § 3102(b) is that it mandates the Government to reimburse FICA taxes paid to an employer. .' Of the phrase "shall be indemnified,” only the term "indemnified” requires ’interpretation. It is undisputed that § 3102(b)'s use of "shall” mandates indemnification. See Appellant’s Br. 27-40; Appellee’s Br. 24-44; see also Kingdomwdre Techs., Inc. v. United States, — U.S. -, 136 S.Ct. 1969, 1977, 195 L.Ed.2d 334 (2016) ("[T]he word 'shall' usually connotes a requirement.”); Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 35, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998) (expldiniñg that the use of "the mandatory ‘shall,’ ,.. normally creates an obligation impervious to judicial discretion” (citation omitted)). There is no meaningful dispute that, if § 3102(b) mandates-monetary compensation, then the Government is the indemnitor under the statute. See N.Y. & Presbyterian Hosp., 128 Fed.Cl. at 373 n.10 (stating that, although the Government argued that § 3102(b) is not money-mandating because it does not "identify the [Gjovernnient as the liable entity,” the Court of Federal Claims' "reasoning restfed] on its construction of the word 'indemnified' ”); see also Oral Arg. 16:43-18:14, http://oralarguments.cafc. uscourts .gov/defáult. aspx?fl=2017-ll 80 .mp3 (arguing, by the Government, that no indem-nitor exists under the Government's interpretation but failing to identify another possible indemnitor under the Hospital's interpretation); Appellant’s Br. 47-48 (arguing that the Government is the only possible indemnitor). See generally Appellee’s Br. (failing to argue that the Government would not be the indem-nitor under the Hospital’s interpretation). Therefore, the dispute turns on the meaning of "indemnified." . Section 3102(b) originally was enacted in 1935 as § 802(a) of the Social Security Act. See Social Security Act, ch. 531, tit. VIII, § 802(a), 49 Stat 620, 636 (1935) (stating, in relevant part, that ”[e]veiy employer ... is hereby indemnified”); see also-Internal Revenue Code, ch. 9A, § 1401(b), 53 Stat. 1, 175 (1939) (codifying the-current "shall be indemnified” language). We focus our- analysis on the dictionaries contemporaneous- to § 3102(b)'s enactment in 1935, see Sandifer, 134 S.Ct. at 876, and note that neither party contends that the amendments to the language affect our analysis. . . This definition also comports with the common law definition of ''indemnify” contemporaneous with § 3102(b)’s enactment. See Restatement (First) of Restitution § 80 (Am. Law Inst. 1937) ("A person who ... is entitled to indemnity ... is entitled to reimbursement....”) . Indeed, in an opinion issued by the Department of Justice’s Office of Legal Counsel, the Government has acknowledged that "§ 3102(b) might be read as a promise to compensate employers for their liability arising out of the FICA tax collection process rather than as a legal exemption from liability in the first instance.” Prejudgment Interest Under the Back Pay Act for Refunds of Fed. Ins. Contributions Act Overpayments, 18 Op. O.L.C. 127, 134 n.7 (1994) ("FICA Mem.”). The Government then stated that, “if two readings are plausible, the one that does not waive sovereign immunity must be adopted” and, thus, it "read § 3102(b) as conferring a legal exemption.” Id. The Government erred in its offhand dismissal of this reading on sovereign immunity grounds. See White Mountain, 537 U.S. at 472, 123 S.Ct 1126 ("This fair inteipretation rule demands a showing demonstrably lower than the standard for the initial waiver of sovereign immunity.” (emphasis added) (internal quotation marks omitted)). Therefore, the Government's acknowledgement that reading § 3102(b) "as a promise to compensate employers” is "plausible,” FICA Mem. 18 Op. O.L.C. at 134 n.7, strongly supports the conclusion that the statute is reasonably amenable to an interpretation that it mandates monetary compensation. . To support this erroneous analysis, the Government cites Muscarello v. United States, 524 U.S. 125, 128, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998), see Appellee's Br. 30, and the Court of Federal Claims cited Schindler Elevator Corp. v. United States ex rel. Kirk, 563 U.S. 401, 410, 131 S.Ct. 1885, 179 L.Ed.2d 825 (2011), see N. Y. & Presbyterian Hosp., 128 Fed.Cl. at 370. However, neither case applies the fair interpretation standard to determine whether a statute is money-mandating and, thus, both cases are inapposite. . The Government further contends that ‘‘[t]he Hospital's position that § 3102(b) provides for reimbursement also cannot be reconciled with the numerous cases holding that FICA does not create a private cause of action for employees to sue their employers over the withholding and payment of FICA taxes.” Appellee's Br. 41; see id. at 41-44 (discussing, inter alia, Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 67-68 (3d Cir. 2008) and McDonald v. S. Farm Bureau Life Ins. Co., 291 F.3d 718, 724-25 (11th Cir. 2002)). However, these cases neither are binding precedent, see Int’l Custom Prods., 843 F.3d at 1360 ("[D]ecisions from other circuits are not binding on this court.” (internal quotation marks and citation omitted)), nor decide whether § 3102(b) is money-mandating. Therefore, we ground our analysis in the text of § 3102(b), as we must. . . Section 3202(b) is entitled "Indemnification of employer,” and the Court of Federal Claims held that "[§ ] 3202(b) uses both ‘indemnified’ and 'not ... liable’ in the same provision to mean the same thing.” N.Y. & Presbyterian Hosp., 128 Fed.CL at 372. For the reasons outlined herein, we hold that the Court of Federal Claims erroneously equated "indemnified” and "not ... liable.”'Moreover, as the Government concedes, see Appel-lee's Br. 49, the Internal Revenue Code explicitly provides that its titles have no legal effect, see I.R.C. '§ 7806(b) ("No inference, implication, or presumption of legislative construction shall be drawn or made by reason of the location or grouping of any particular section or provision or portion of this title .... ”); see also United States v. Reorganized CF & I Fabricators of Utah, Inc., 518 U.S. 213, 222-24, 116 S.Ct. 2106, 135 L.Ed.2d 506 (1996) (accepting the Government’s disavowal of reliance upon a title pursuant to § 7806(b)). The Court of Federal Claims thus erred by relying on the use of "indemnification” in § 3202(b)’s title. . When originally enacted, both §§ 3202(b) and 3403 provided that the employer is “hereby indemnified,” Carriers and Employees Tax Act of 1935, Pub. L. No. 74-400, ch. 813, § 3(a), 49 Stat, 974, 975 (predecessor to § 3202(b)); Revenue Act of 1916, ch. 463, § 9(b), 39 Stat. 756, 764 (predecessor to § 3403), but Congress later replaced that language with the current “shall hot be liable” language. Revenue Act of 1942, ch. 619, § 467(b), 56 Stat. 798, 891 (predecessor to § 3403); Internal Revenue. Code of 1939, ch. 9B, § 1501(b), 53 Stat. 1, 179 (predecessor to § 3202(b)). To the extent these subsequent amendments may inform Congressional intent, we find instructive Congress's decision not to amend § 802(a) of the Social Security Act, § 3102(b)’s predecessor, despite the statutes' similar wordings arid purposes. See Haig v. Agee, 453 U.S. 280, 301, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1981) (referring to a subsequent Congress's amendments to a statute as "weighty evidence of [Congressional approval” because, “though [Congress] once again enacted legislation relating to [the subject matter of the statute], [it] left completely untouched the broad rule-making authority granted in the earlier [a]ct” (internal quotation marks and citation omitted)). But see Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 840, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) ("The views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one,” (internal quotation marks, brackets, and citation omitted)), . The Government argues that, "if the Hospital’s reading of § 3102(b) as a reimbursement provision were correct, then there would be no need for employees to file refund claims with the IRS, so long as their employers were willing to pay their claims and obtain reimbursement from the United States," Appellee’s Br, 37, which would render § 7422 "virtually a dead letter," id. (internal quotation marks and citation omitted), and allow "employees and employers [to] easily circumvent” the Internal Revenue Code’s refund scheme, id. at' 38; see id. at 35-41. We need not decide whether § 3102(b) is inconsistent with § 7422’s refund scheme because "[t]he role of this [c]ourt is to apply the statute as it is written—even if we think some other approach might accord' with good policy.” San-difer, 134 S.Ct. at 878 (internal quotation marks and citation omitted)..