NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**PAMELA BENNETT, JAMES BENNETT,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

_____

2024-1242

_____

Appeal from the United States Court of Federal Claims in No. 1:22-cv-00871-EHM, Judge Edward H. Meyers.

_____

Decided:  November 12, 2024

_____

PAMELA BENNETT, Rancho Santa Fe, CA, pro se.

JAMES BENNETT, Rancho Santa Fe, CA, pro se.

YARIV S. PIERCE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee.  Also represented by BRIAN M. BOYNTON, STEVEN JOHN GILLINGHAM, PATRICIA M. MCCARTHY.

_____

Before HUGHES, MAYER, and STARK, *Circuit Judges*.

PER CURIAM.

James Bennett and Pamela Bennett (the "Bennetts"), proceeding *pro se*, seek, as they have many times before, compensation for the foreclosure by Bank of America, N.A. ("BANA") of a property owned by Pamela Bennett. In a complaint filed in the Court of Federal Claims, the Bennetts asserted various bases for the federal government's purported obligation to pay them, including the statutory authority of the Office of the Comptroller of the Currency ("OCC" or "Comptroller") which they contend is money-mandating, a consent order entered into between BANA and the OCC, and a supposed illegal exaction of their money. The Court of Federal Claims found the Bennetts' claims frivolous and granted the government's motion to dismiss for lack of subject matter jurisdiction.

We agree with the Court of Federal Claims. The Bennetts failed to articulate a money-mandating source of law giving the Court of Federal Claims jurisdiction, failed to identify a contract or consent order that they have a right to enforce, and fail to show any error in the trial court's judgment. Thus, we affirm.

I

A

James Bennett transferred his interest in a property located in Rancho Santa Fe, California (the "Property") to his wife, Pamela, on February 26, 2007.[1] Pamela sought

---

[1]    References to "App'x" are to the appendix filed with the Bennetts' opening brief. References to "S. App'x" are to the supplemental appendix filed with the government's response brief.

and obtained a loan secured by a deed of trust against the Property, "which identified America's Wholesale Lender as Lender, Pamela Bennett as the sole Borrower, Recontrust Company, N.A. ('Recontrust') as Trustee, and Mortgage Electronic Registration Systems, Inc. as Nominee." App'x 2-3. On December 11, 2009, Recontrust instituted foreclosure proceedings with respect to the Property. In 2012, Recontrust then sold the Property at public auction to BANA, which was the highest bidder. BANA then received the deed of trust to the Property.

B

Meanwhile, the OCC "conducted an examination of the residential real estate mortgage foreclosure processes" of various institutions, including BANA. S. App'x 24. The OCC "identified certain deficiencies and unsafe or unsound practices . . . in [BANA's] initiation and handling of foreclosure proceedings." *Id*. As a result, the Comptroller issued a cease and desist order to BANA ("Consent Order"), and then BANA executed a Stipulation and Consent ("Stipulation"). *See* 12 U.S.C. § 1818(b) (authorizing Comptroller to order financial institutions to pay restitution). In these documents, BANA agreed to take various remediation steps, including providing certain reimbursements.

As pertinent to this appeal, the Consent Order states that it "constitutes a settlement of the cease and desist proceeding against [BANA] contemplated by the Comptroller, based on the unsafe or unsound practices

---

The parties raise no issue as to James Bennett's standing, so the Court of Federal Claims assumed for purposes of its analysis that he had a sufficient interest in the Property to be a plaintiff. *See* App'x 2 n.1. We do the same.

described in the Comptroller's Findings." S. App'x 49. Among other things, the Consent Order required BANA to "reimburs[e] or otherwise appropriately remediat[e] borrowers" for financial injury caused by errors, misrepresentations, or other deficiencies identified in the Comptroller's review, and to take "appropriate steps to remediate any foreclosure sale where the foreclosure was not authorized." S. App'x 40. The Consent Order affirmatively indicates that it is a final order issued pursuant to 12 U.S.C. § 1818(b) but "does not form, and may not be construed to form, a contract binding the Comptroller or the United States." S. App'x 49-50. Moreover, the Consent Order adds that nothing in it "shall give to any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under the Stipulation and Consent or this Order." S. App'x 50.

In February 2012, OCC and BANA entered into a Civil Settlement Agreement to formally settle claims that had been addressed in the Consent Order. A year later, in February 2013, OCC and BANA amended the Consent Order ("Amendment"). In relevant part, the Amendment repealed the portion of the Consent Order directing BANA to remediate borrowers, and provided instead that BANA would pay $1,127,453,261 into a Qualified Settlement Fund. The proceeds of the Qualified Settlement Fund would thereafter be "distribut[ed] to the In-Scope Borrower Population," which was defined as the group of borrowers with a pending or completed foreclosure on their primary residence at any time between January 1, 2009 and December 31, 2010, and would occur "in accordance with a distribution plan developed by the OCC and Board of Governors [of the Federal Reserve System] in their discretion." S. App'x 67-68. The actual payments would be made at the discretion of the Comptroller and Board of Governors, by their paying agent, Rust Consulting, Inc.

## C

Ever since the foreclosure of their Property, the Bennetts have litigated numerous actions against BANA in multiple state and federal courts, all of which have failed to result in relief. *See, e.g.*, *Bennett v. Bank of Am., N.A.*, 2021 WL 4355959, at *3 (W.D.N.C. Sept. 24, 2021) (affirming dismissal of Bennetts' attempt to relitigate state court judgments in federal court); *Bennett v. Bank of Am., N.A.*, 2021 WL 4355959 (W.D.N.C. Sept. 24, 2021) (finding no private right of action and that Bennetts' claims were barred by res judicata); *Bennett v. Bank of Am., N.A.*, 2021 WL 5242836 (W.D.N.C. Nov. 10, 2021) (denying motion to vacate and finding no violation of due process, equal protection, or res judicata), *aff'd*, 2022 WL 986988, at *1 (4th Cir. Mar. 31, 2022); *Bennett v. Bank of Am., N.A.*, 2019 WL 1723402, at *3 (Cal. Ct. App. Apr. 18, 2019) (affirming dismissal of claims including those alleging BANA fraudulently represented its authority to cause recording of Notice of Default and violated state foreclosure laws); *Bennett v. Bank of Am. Corp.*, 2015 WL 222515 (Cal. Ct. App. Jan. 15, 2015) (affirming dismissals of claims alleging fraudulent concealment and intentional misrepresentation against financial institutions including BANA). On at least one occasion, the Bennetts have been declared vexatious litigants. *See Bennett et al. v. Bank of America, N.A., et al.*, 2019 WL 1723402, at *7-10 (Cal. Ct. App. Apr. 18, 2019).

The case before us was initiated by the Bennetts filing a complaint against the United States in the Court of Federal Claims on August 4, 2022. In it, they allege a breach of fiduciary duties owed by the Comptroller under the Consent Order and 12 U.S.C. § 1818(b)(6)(A), statutory violations, breach of contract, vicarious liability of the Comptroller for BANA's acts, and illegal exactions by the

government.[2]   The government moved to dismiss, contending that the Bennetts had not asserted any cause of action over which the Court of Federal Claims had jurisdiction, they have no enforceable contractual rights, and they had not made any non-frivolous allegations that their claims are governed by any money-mandating statute.

The Court of Federal Claims carefully and thoroughly considered all of the Bennetts' claims and all of the government's arguments.  First, the court agreed with the government that while 12 U.S.C. § 1818(b)(6)(A) "concerns the relief that the appropriate Federal banking agency may seek for the enforcement of any effective and outstanding notice or order issued under this section," it is not a money-mandating statute.  App'x 9 (internal quotation marks omitted).  Instead, the court found, the statute confers authority to mandate payment of money by deposit institutions and required no money from the United States.

---

[2]   The Court of Federal Claims accurately characterized the claims as follows:

> (1) OCC breached its fiduciary duty under the Consent Order and 12 U.S.C. § 1818(b)(6)(A)(i) by failing to provide restitution to Plaintiffs; (2) OCC engaged in a "continuing violation" of the Consent Order and 12 U.S.C. § 1818(b)(6)(A)(ii) by failing to provide such restitution; (3) OCC breached the terms of the Consent Order; (4) OCC assumed vicarious liability for BANA in executing the Consent Order; and (5) OCC illegally exacted funds from Plaintiffs.

App'x 6.

Nor does § 1818(b)(6)(A) impose any fiduciary duties owed by the Comptroller to the Bennetts, for reasons including that it was within the Comptroller's discretion whether or not to order payment of restitution.

Second, the Court of Federal Claims found that the Bennetts lacked any right to enforce the Consent Order. It found that the Consent Order and associated orders, such as the Stipulation Agreement, are not "contracts." This conclusion was based on the finding that there was no mutuality of intent, as the Consent Order expressly states, which is necessary to form a contract. Moreover, the Consent Order disclaims the right of any third-party to rely on it or beneficiaries thereto.

Third, the Court of Federal Claims determined that the Bennetts failed to show that it had subject-matter jurisdiction over their illegal exaction claim, i.e., their claim that they have "paid money over to the Government, directly or in effect, and seek[] return of all or part of that sum." *Id.* at 15-16 (internal quotation marks omitted). The Bennetts did not "demonstrate that the statute or provision causing the [alleged] exaction itself provides, either expressly or by 'necessary implication,' that 'the remedy for its violation entails a return of money unlawfully exacted.'" *Id.* at 16 (quoting *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005)).

After the Court of Federal Claims denied the Bennetts' motion for reconsideration, they timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## II

The Tucker Act provides the Court of Federal Claims with jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases

not sounding in tort." *Id.* § 1491(a)(1). In order to establish jurisdiction under the Tucker Act, a plaintiff must also "demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *United States v. Mitchell*, 463 U.S. 206, 216-17 (1983) (internal quotation marks omitted). Because the Tucker Act is only "a jurisdictional statute" and "does not create any substantive right enforceable against the United States for money damages," *United States v. Testan*, 424 U.S. 392, 398 (1976), it is a plaintiff's burden both to establish jurisdiction and to "identify a separate source of substantive law that creates the right to money damages," *Greenlee Cnty., Ariz. v. United States*, 487 F.3d 871, 875 (Fed. Cir. 2007).

A pro se litigant's complaint "is to be liberally construed" and is "held to 'less stringent standards'" than a complaint drafted by counsel. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "[A] court may not similarly take a liberal view of th[e] jurisdictional requirement." *Kelley v. Sec'y, U.S. Dep't of Lab.*, 812 F.2d 1378, 1380 (Fed. Cir. 1987); *see also Roman v. United States*, 61 F.4th 1366, 1370 (Fed. Cir. 2023).

## III

### A

The Bennetts contend that 12 U.S.C. § 1818(b)(6)(A) must be money-mandating because, if it is not, OCC would lack authority to order financial institutions to pay restitution for actions resulting in unjust enrichment or stemming from reckless disregard for the law. This is incorrect. Instead, as the Court of Federal Claims stated: "12 U.S.C. § 1818(b)(6) does confer authority to mandate payment of money – but that authority is vested in the Government to order such payment *by depository institutions*," such as BANA. App'x 9. "[T]here is simply

nothing in the statutory text that mandates or even implies payments by the *United States* for any violation of Section 1818." *Id.*

The Bennetts' citation to *New York & Presbyterian Hospital v. United States*, 881 F.3d 877 (Fed. Cir. 2018), is unavailing. There, a hospital alleged that Internal Revenue Code § 3102(b), which dictated that parties would be indemnified in certain circumstances, was money-mandating. We held that the statutory language involved there, "§ 3102(b)'s 'shall be indemnified'," "is a money-mandating source of substantive law." *Id.* at 882, 888. Here, by contrast, the relevant language provides that the Comptroller has the "authority to issue an order" requiring insured banking institutions and affiliated parties "to take affirmative action to correct or remedy any conditions," including requiring those institutions to "make restitution or provide reimbursement, indemnification or guarantee against loss" under certain conditions. 12 U.S.C. § 1818(b)(6)(A). This provision is nothing like the "shall be indemnified" language of IRC § 3102(b).

Thus, the Court of Federal Claims correctly determined that it did not have jurisdiction under the Tucker Act with respect to the Bennetts' claims that OCC violated statutory provisions or breached fiduciary duties by failing to pay them restitution. The trial court properly dismissed these claims for lack of jurisdiction.

B

The Bennetts also rely on § 1818(b)(6)(A) to argue that OCC owes fiduciary duties to them, which it breached. They add that the Comptroller's control over the settlement fund further demonstrates that the Comptroller was acting as a trustee, thereby, again, undertaking fiduciary duties to beneficiaries such as themselves. These contentions, too, lack merit. As the Court of Federal Claims stated, the Comptroller's authority to order reimbursement is discretionary. *See* App'x 9. Section

1818(b)(6)(A) does not mandate any restitution, let alone full restitution. Nor was any trust established pursuant to the settlement. In short, the Comptroller owes the Bennetts no fiduciary duties.

C

The Bennetts' illegal exaction claim fares no better. With this claim, the Bennetts allege that, as part of the settlement with BANA, the government took the Bennetts' money "in contravention of the Constitution, a statute, or a regulation." *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (internal quotation marks omitted). This claim, too, is predicated on the Bennetts' mistaken assumption that § 1818(b)(6)(A) mandates complete reimbursement, which, as we have already explained, is incorrect. Thus, as the Court of Federal Claims rightly held, the Bennetts' illegal exaction claim "necessarily fails because Section 1818 does not explicitly or by necessary implication require the United States to pay the Bennetts in the event of a violation." App'x 16; *see also Norman*, 429 F.3d at 1095 ("To invoke Tucker Act jurisdiction over an illegal exaction claim, a claimant must demonstrate that the statute or provision causing the exaction itself provides, either expressly or by necessary implication, that the remedy for its violation entails a return of money unlawfully exacted.") (internal quotation marks omitted). While the Bennetts correctly point out that the *Norman* requirement is separate from the requirement that a statute be money-mandating, *see Boeing Co. v. United States*, 968 F.3d 1371, 1384 (Fed. Cir. 2020), there is no indication that the Bennetts have "paid money over to the Government," *id.* at 1383, or that the statute provides "a cause of action with a monetary remedy," *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373 (Fed. Cir. 2000). Therefore, we agree with the Court of Federal Claims that the Bennetts "fail to allege facts sufficient to establish the Court's illegal exaction jurisdiction." App'x 16.

## D

The Bennetts additionally argue that the Consent Order entered into between the Comptroller and BANA is a contract enforceable by themselves as parties or as third-party beneficiaries. They are wrong.

"As a general rule, if a plaintiff alleges breach of a contract with the government, the allegation itself confers power on the [Court of Federal Claims] to decide whether the claim has merit." *Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1341 (Fed. Cir. 2021). However, if "the plaintiff's allegations are frivolous, wholly insubstantial, or made solely for the purpose of obtaining jurisdiction," dismissal for lack of jurisdiction is appropriate. *Id.* We agree with the Court of Federal Claims that this case involves just such a situation and the trial court lacked jurisdiction. App'x 15.

The Consent Order explicitly and unambiguously states that it is not a contract: "This Order is intended to be, and shall be construed to be, a final order issued pursuant to 12 U.S.C. § 1818(b), and expressly does not form, and may not be construed to form, a contract binding the Comptroller of the United States." App'x 91-92; *see also* App'x 113 (Amendment saying same); App'x 169 (Stipulation Agreement saying same).[3]

---

[3] The parties dispute whether Federal Circuit or Fourth Circuit law governs issues relating to interpretation of the Consent Order. We need not resolve this dispute, as the interpretation of the documents is the same regardless. *See UPI Semiconductor Corp. v. Int'l Trade Comm'n*, 767 F.3d 1372, 1377 (Fed. Cir. 2014) (holding that contracts and consent orders are interpreted *de novo*); *Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*,

We need not decide whether a contract exists here because, even if there is a contract, it is indisputable that the Bennetts are neither parties to it nor third-party beneficiaries, and cannot enforce any alleged contract. The Bennetts are indisputably not signatories to the Consent Order. Moreover, the Consent Order specifically disavows third-party beneficiaries, stating that "[n]othing in the Stipulation and Consent or this Order, express or implied, shall give to any person or entity, other than the parties [t]hereto, and their successors [t]hereunder, any benefit or any legal or equitable right, remedy or claim under the Stipulation and Consent or this Order." App'x 95-96; *see also* App'x 113, 117 (Amendment saying same); App'x 170 (Stipulation Agreement saying same).

The Bennetts contend they are parties to the Consent Order because they are mentioned in it. While a group of borrowers that includes the Bennetts are in fact mentioned, *see* App'x 103, a mere mention in a contract does not render an individual a party to it. *See Fid. & Guar. Ins. Underwriters v. United States*, 805 F.3d 1032, 1087 (Fed. Cir. 2015). Nor does the notice sent to the Bennetts from Rust Consulting Inc. constitute a contract. The notice does not name the Bennetts as parties but, instead, simply indicates that they are eligible for compensation. App'x 257 ("You are eligible to receive a payment as the result of an agreement between [BANA] and federal banking regulators.").

---

377 F.3d 408, 418 (4th Cir. 2004) ("The interpretation of a written contract is a question of law that turns upon a reading of the document itself."); *see also Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 512 (4th Cir. 2003) (same for consent order). The Consent Order contains unambiguous provisions that render the Bennetts' claims frivolous.

Therefore, the Court of Federal Claims did not err by dismissing the Bennetts' breach of contract claims. *See, e.g., Ransom v. United States*, 900 F.2d 242, 244 (Fed. Cir. 1990) ("To maintain a cause of action pursuant to the Tucker Act that is based on a contract, the contract must be between the plaintiff and the government.").

## IV

We have considered the Bennetts' remaining arguments and find them unpersuasive. For the reasons articulated above, we affirm the decision of the Court of Federal Claims.

**AFFIRMED.**

### COSTS

Costs awarded to the government.